**BROWN et al. v. SMITH et al.**

**No. 4092.**

Court of Civil Appeals of Texas. Beaumont.

Aug. 4, 1942.

Rehearing Denied Jan. 20, 1943.

514

Orgain, Carroll & Bell, of Beaumont, and Hardwicke & Cheek, of Fort Worth, for appellants.

Lefler & Lefler and W. O. Bowers Jr., all of Beaumont, for appellees.

WALKER, Chief Justice.

On the 15th day of June, 1939, appellees, Ector and Floyd Smith, joined by their wives, executed to appellants, H. L. Brown and W. R. Wheeler, a mineral lease on 62.75 acres of land in Jefferson county. This lease conveyed to the lessees a seven-eighths mineral interest in the land, lessors reserving a one-eighth royalty interest. The consideration was $6,275. The lease and a cashier's check for the con-

sideration were attached to an escrow agreement executed by appellants and appellees on the 15th day of June, 1939, and all three instruments were deposited with the escrow agent, Security State Bank & Trust Company. By the escrow agreement, appellees as "lessor" bound themselves "to forthwith prepare and deliver to the lessee for examination by his attorneys, a complete abstract of title to the land described in said lease, brought down to date," and appellants as "lessee" bound themselves: "If title to said land is good as shown by said abstract, the lessee shall accept said lease and same shall be delivered to it and the check shall be delivered to lessor." Appellees delivered to appellants certain abstracts which they refused to accept as in compliance with the escrow contract. Thereupon appellees brought this suit against appellants and the esrow agent, alleging full compliance by them and praying for judgment for the $6,275, with interest and costs. The escrow agent answered by interpleader, tendering the funds held by it into court, and praying for judgment for its costs, with reasonable attorney's fees. Appellants defended on the theory that appellees had not complied with the escrow contract and did not have good title to the land, and by cross action against appellees for the costs and attorney's fees that the escrow agent might recover against them. On trial to the court without a jury, judgment was for appellees against appellants for $6,275, with interest at six per cent per annum from December 15, 1939; for the escrow agent for its costs, including attorney's fees; and against appellants on their cross action. Appellants have regularly prosecuted their appeal.

■ Appellants assign error against the trial court's fact conclusion that appellees prepared and furnished them "a complete abstract" which showed a good title in appellees to the seven-eighths mineral interest covered by the mineral lease attached to the escrow agreement. This assignment is overruled.

The leased premises consisted of four small tracts of land. The theory of appellees was that all four tracts are on section 17, H. T. & B. R. R. Company survey. Appellants contend that "it was reasonable to conclude" that a part of the land was on section 16 of this survey—section 17 lies immediately west of section 16; that the location of the dividing line between sections 17 and 16, as shown by the abstracts furnished them by appellees, was uncertain. Therefore, appellants contend appellees breached the contract by not furnishing them a basic abstract of section 16 for the period to April 4, 1935.

The location of the dividing line between sections 17 and 16 was an immaterial issue. Long prior to 1930 appellees owned section 16. On the 3rd day of March, 1930, Mrs. C. B. Lee, owning section 17, conveyed it to C. D. Doornbos, reserving a one-thirty-second royalty interest in the minerals, and excepting from her conveyance two small tracts of land being parts of the land in controversy; Doornbos conveyed section 17 to L. D. Fontenot. One week after her conveyance to Doornbos, Mrs. Lee conveyed the two tracts of land which she excepted from her conveyance to Doornbos to appellee Floyd Smith, reserving to herself a one-thirty-second royalty interest in the minerals. On the 8th day of July, 1937, appellees recovered judgment against Mrs. Lee, Doornbos and Fontenot for the title and possession of the 62.75 acres of land in controversy subject to Mrs. Lee's reserved royalty. As the basis of their title, appellees plead the statute of limitation of ten years, and in rendering judgment in their favor the court found that appellees had been in continuous, open, notorious and adverse possession of the land in controversy from the 27th day of July, 1927. Appellees recovered the land, not by reference to sections 16 and 17, but by field notes locating the land by artificial objects on the ground—public roads, pipe lines, drainage canals, etc. The specific description in these field notes was so definite and certain that no possible issue could arise as to the location on the ground of the very land recovered by appellees. The land leased by appellees to appellants was the very land recovered by them in this judgment and described as it was described in the judgment. Since the record title to section 17 was in the defendants in that suit, and appellees owned the record title to section 16, and the land in controversy was located on the ground by calls for objects on the ground, the judgment in favor of appellees vested in them the title to the land in controversy whether it was on section 17 or section 16. Therefore, the location on the ground of the dividing line between these sections was an immaterial issue. These facts were reflected by

the abstracts furnished by appellees to appellants.

We also overrule appellants' point that there are outstanding mineral leases executed by the owners of section 17 which cloud appellees' title because of the uncertainty as to the location on the ground of the dividing line between sections 16 and 17. Appellees' judgment against Mrs. Lee, Doornbos and Fontenot was rendered on the 8th day of July, 1937. This judgment was rendered on the court's finding, written into the face of the judgment, that appellees' adverse possession began prior to the 8th day of July, 1927. No lease which could cloud appellees' title was executed prior to the 8th day of July, 1927. The leases executed subsequent to that date, no possession being shown under the leases, did not interrupt the running of limitation in favor of appellees. Broughton v. Humble Oil & Refining Co., Tex. Civ.App., 105 S.W.2d 480. The abstract furnished by appellees to appellants showed the date of the execution of these leases and that they did not cloud appellees' title, under the principles of law announced in the case just cited. As against this conclusion, appellants say they were not required to accept a limitation title. Appellants' proposition relates only to a limitation claim and has no application to a limitation claim reduced to title by the judgment of a court of competent jurisdiction.

We overrule appellants' exceptions to the abstracts, on the ground that they disclosed certain easements—public roads, pipe lines, drainage canals, etc.—across the 62.75 acres of land. On the face of the abstracts these easements would not have interfered in any way with appellants' development of the land under the lease attached to the escrow agreement.

One further word on the obligation to furnish "a complete abstract." The escrow agreement gave its own definition of a complete abstract—one that "showed good title to said land." The abstracts furnished showed that appellees owned good title to the seven-eighths mineral interest in controversy, and on full development of the facts on the trial no defect was shown which to the least extent cast a cloud upon appellees' title. The escrow agreement did not bind appellees to furnish additional copies of instruments which on the face of the abstracts furnished would not have disclosed defects in the title, and the additional instruments requested by appellants were of this nature.

Again, appellees lived in Fort Worth, Texas. They instructed their local agent to have the title passed upon by a Beaumont attorney, and authorized him to select their attorney. We quote from the testimony of this agent: "As to my first connection with reference to a purported lease on the 62.75 acres of land in question here, there was a well being drilled in the western portion of section 17, known as Fontenot No. 1. This well had reached what we termed a critical depth. It was either going to be an oil well or a saltwater well within a week or ten days, according to our estimate. That was, well I would say it was ten or fifteen days before the contract was signed with Ector Smith that I knew about this situation. * * * As soon as I got the definite proposition I 'phoned Brown and Wheeler in Ft. Worth, and I told them the matter would have to be closed forthwith, we only had a very short time on it on account of the condition of this well. They thereupon told me to get the lease in proper shape and have it passed upon, have the title passed upon by some reputable attorney down there, and they agreed with me that they would take Mr. Reeves' opinion. * * * After I had this conversation with Mr. Martin about it and after I had called Brown and Wheeler, I got in touch with Mr. Reeves, and I told him we had agreed to take this lease provided he approved the title, and that Judge Lefler thought he had everything in pretty good shape, and for him to get in touch with Judge Lefler and get what evidence of title he had, and to act quickly on it because we had to close the deal before any test was made in the well, and, of course, we did not know how soon that test would be made, but we knew it would be forthcoming within a very short while." Judge Lefler represented appellees and dealt with Judge Reeves as attorney for appellants. As we understand the record, Judge Lefler representing appellees complied with all of Judge Reeves' demands as to furnishing the abstracts, and the defects pointed out by Judge Reeves were met by appellees. The well came in a dry hole. Appellants switched to their Fort Worth attorneys, who made additional demands on appellees. It is our conclusion that these additional demands were not within the terms of the

escrow agreement, since appellants had bound themselves to deal with appellees through the Beaumont attorney, and appellees had not consented to deal with the Fort Worth attorneys.

█ Reserving to herself a one-thirty-second royalty interest in her conveyance to appellees of two of the tracts of land in controversy, Mrs. Lee did not reserve the right to join in leasing this land nor to share in the bonuses and the sale prices which might be paid for a lease on the land. Her reservation was simply one of royalty and nothing more. Therefore, Floyd Smith, her grantee, had the absolute right to execute the lease to appellants without her consent or joinder. Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543; Murphy v. Jamison, Tex.Civ.App., 117 S. W.2d 127, 129; State National Bank v. Morgan, 135 Tex. 509, 143 S.W.2d 757. Appellants would distinguish the case at bar from the Schlittler v. Smith on the theory that the land in controversy in this suit consisted of four separate tracts of land, leased as one tract of land. Appellants advance the proposition that as between them and appellees they would have had the right to develop any part of the leased premises, and so, in order to protect themselves as against Mrs. Lee, it was necessary that she join in the lease. The distinction appellants draw is one of fact and not of a controlling principle of law. Since Mrs. Lee reserved no right to participate in the leasing of the land she had conveyed to Floyd Smith, her failure to join in the lease in issue did not cast a cloud upon appellees' title.

█ Appellants make the point against the abstracts furnished, that they discovered that certain judgments had been abstracted against one of the appellees. The abstract furnished showed that these abstracted judgments no longer constituted a cloud upon appellees' title.

█ By bringing suit on the escrow agreement appellees elected to affirm the contract and were, therefore, entitled to judgment for the contract price, with interest from the date of the breach. Steinberger Petroleum Corp. v. Whitley, Tex. Civ.App., 105 S.W.2d 727.

█ Among the abstracts furnished appellants by appellees was one required by appellants' attorney. However, appellants' attorney advised appellees that they need not prepare this abstract, since he could borrow it from a friend. He did borrow this abstract and examined it, and treated it as if it had been furnished by appellees at their cost. The court did not err, on this statement, in receiving in evidence this abstract as among the abstracts furnished appellants by appellees as per the terms of the escrow agreement.

█ The trial court did not err in refusing to strike the testimony of Forrest Daniel. The trial was to the court without a jury, and without setting out Mr. Daniel's testimony, we overrule this contention, since it does not reasonably appear that this testimony influenced the court's judgment to appellants' injury.

Conclusions of fact and law were filed by the court on appellants' motion. They suffered no injury by the court's refusal to comply with their motion to file additional fact conclusions.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

Affirmed.