## MILLER v. SPEED et al.
### No. 2919.

Court of Civil Appeals of Texas. Eastland.
April 11, 1952.

H. J. Brice, Snyder, A. W. Walker, Jr., Robertson, Jackson, Payne, Lancaster & Walker, Dallas, for appellant.

Bryan, Suhr & Bering, Houston, J. A. Rauhut and Robert C. McGinnis, Austin, Harry N. Harris, Buck, Harris & Buck, Fort Worth, for appellees.

Clyde E. Willbern and Lloyd Armstrong, Houston, for Tide Water Associated Oil Co.

GRISSOM, Chief Justice.

Claude H. Miller and wife sued Carleton D. Speed, Jr., and others. Miller died prior to the trial and the cause was continued in the name of Zula Miller, individually and as community administratrix. Mrs. Miller sought a declaratory judgment construing the effect of a reservation in a deed and for an accounting of royalty accrued from the production of oil. It was stipulated that First Texas Joint Stock Land Bank of Houston, hereinafter called Bank, was the owner of the fee simple title to the land and minerals on December 14, 1941, when the Bank executed a deed to J. W. Jacobs. Said deed contained the following reservation:

"Out of the above described tract of land there is hereby expressly reserved to the vendor herein, its successors and assigns an undivided ½4th of all the oil, gas and other minerals produced, saved and made available for market therefrom for a period of 15 years from the date hereof; but should there be no production of such oil, gas or other minerals during said period of time, said interest shall be terminated; provided, however, that should there be production of oil, gas or other minerals within such period of time upon said land said undivided interest shall be prolonged and continue in full force and effect so long as there is such production, and in the execution of any mineral leases it shall not be necessary for the grantor herein to be joined therein, nor shall the grantor herein be entitled to participate in or receive any of the bonuses or delay rentals provided for in such leases."

The proper construction of said reservation is the question to be decided. Mrs. Miller is now the owner of the 160 acres conveyed to Jacobs, subject to the above reservation, and defendants own the interest reserved by the Bank.

Mrs. Miller contends that the quoted paragraph constitutes a reservation of ½4th mineral fee interest and that defendants (other than Tidewater Associated Oil Company, who owns an oil and gas lease executed by Jacobs on said land and produced oil therefrom and occupies the position of a stake holder in this suit) owns only ½4th of the oil, gas and other minerals in place. She contends that defendants, the present owners of said reserved interest, are entitled to only ½4th of a ⅛th royalty subsequently reserved in an oil and gas lease executed by Jacobs. Defendants contend it is a reservation of ½4th of all oil produced, saved and made available for market, free of cost to them. In a trial to the court, the court held that it is a reservation of ½4th of all the oil, gas and other minerals produced, saved and made available for market, free of cost to defendants. Judgment was rendered accordingly and Mrs. Miller has appealed.

Plaintiff, Mrs. Miller, prayed that the court determine that the "mineral interest" reserved by the Bank in its deed to Jacobs is a reservation of an undivided "½4th of the fee title to all the oil, gas and other minerals in and under and that may be produced from said land for a period of 15 years * * * and as long thereafter as oil, gas and other minerals are produced from said land, entitling the defendants * * * to receive * * * only their respective shares of ½4th of the ⅛th royalty payable under the terms of the lease * * *" executed by Jacobs and now owned by Tidewater.

Plaintiff's first point is that the court erred in refusing to hold that the reservation is, as a matter of law, a reservation of an undivided ½4th mineral interest. Plaintiff plainly asked the court to

read into the reservation two provisions not contained therein, to-wit: (1) that the Bank reserved ¼th of ⅛th of all the oil, gas and minerals produced, saved and made available for market; and (2) that there was reserved a ¼th interest in the minerals in place under the ground. Without the words "in and under said land" or words of similar import, the reserved interest is clearly ¼th of all the oil, gas and other minerals produced, saved and made available for market, and is an interest in all the oil, gas and other minerals after they are produced, saved and made available for market. It is royalty and not an interest in the minerals in place under the ground, which must be discovered and produced at great expense. ¼th of "all" of the oil produced cannot mean ¼th of ⅛th of the oil produced. The Bank did not reserve ¼th of the oil in the ground but ¼th of all the oil after it was produced, saved and making ready for sale a ¼th of the not to pay the cost of producing, saving and making ready for sale a ¼th of the minerals in the ground. By the express language of the reservation it was entitled to ¼th of "all" the oil after it was produced, saved and ready for market. 31-A Tex.Jur. 850; King v. First Nat. Bank of Wichita Falls, 144 Tex. 583, 192 S.W.2d 260, 261, 263, 163 A.L.R. 1128. The Bank's interest was payable only in the event of production within the time specified and payable only out of production. Kokernot v. Caldwell, Tex.Civ.App., 231 S.W.2d 528 (W.R.); 31-A Tex.Jur. 841; Sheppard v. Stanolind Oil & Gas Co., Tex.Civ.App., 125 S.W.2d 643 (W.R.); Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699, 700; Fleming v. Ashcroft, 141 Tex. 41, 175 S.W.2d 401. Furthermore, the subsequent provision giving Jacobs authority to lease the land and retain all bonuses and rentals is additional proof, if needed, that the thing retained was royalty and not minerals in place. Said rights naturally followed the grantee's ownership of the minerals in place. Said subsequent provision merely stated the legal effect of the conveyance by the Bank to Jacobs with a reservation of only a right to a ¼th royalty of all oil produced, saved and made ready for market under any lease

subsequently to be executed by Jacobs. Humble Oil & Refining Co. v. Harrison, 146 Tex. 216, 205 S.W.2d 355, 359; Harris v. Currie, 142 Tex. 93, 176 S.W.2d 302; 4 A.L.R.2d 503; Mecom v. Thompson, Tex. Civ.App. 239 S.W.2d 847 (RNRE); Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544.

An interest in minerals in place under the ground, which must be found and produced at considerable expense, must either share in the cost of production or contribute a part of such interest to others to produce the minerals. But, a ¼₂₄ th of all oil after it is produced, saved and made available for market is not an interest in oil and gas in place but is royalty and does not share in the expense of producing, saving and making it ready for sale. 31-A Tex.Jur. 835.

As conceded by distinguished counsel for plaintiff, Armstrong v. McCracken, 204 Okl. 319, 229 P.2d 590, is directly in point. Armstrong and wife conveyed a tract of land to Coulter with the following reservation:

"The grantors herein hereby reserve unto themselves from this conveyance an undivided ¹⁄₁₆ interest in and to all oil and gas produced from the land above described, giving full power to the grantees to execute and deliver oil and gas mineral leases upon such land without the concurrence therein or signatures thereto of grantors and waiving all right to participate in any bonuses paid for or extension payments under such oil and gas lease or leases."

Mrs. Armstrong owned a ½ interest in the reserved ¹⁄₁₆. The trial court held that she was entitled only to ¹⁄₁₆ of ⅛ of the oil produced from said land under a lease executed by the grantee in said deed which retained a ⅛th royalty. The Supreme Court reversed and rendered said judgment, holding:

"The trial court took the view that this ¹⁄₁₆ interest which was retained by the Armstrongs was ¹⁄₁₆ of the ⅛ royalty interest, and unquestionably relied upon the case of Swearingen v. Oldham, 195 Okl. 532, 159 P.2d 247, as

authority for its judgment in the case. In our opinion the Swearingen case is distinquishable from this one, for in that case there was considerable oral testimony offered, especially that of the attorney to whom the deed was submitted, who testified that he told the parties to the deed that Mr. Swearingen would take ⅟₁₆ of ⅛ of the oil, as provided in the lease. The trial judge stated in that case that the attorney's testimony influenced him in arriving at his judgment. The reservation in the Swearingen case was of ⅟₁₆ of all oil and gas and other minerals in and under the land, and an owner of a mineral interest would know that it would be necessary to give up something to get production, while in the case at bar the grantors retained their right to the oil and gas that was produced, indicating that they did not intend to give up anything in order to have the land developed. We also think that Hinkle v. Gauntt, 201 Okl. 432, 206 P.2d 1001, is distinguishable from the case at bar on the facts.

"The judgment is reversed, with instructions to the lower court to enter judgment for Ruth E. Armstrong, fixing her interest at one-half of ⅟₁₆ of all oil and gas produced from the land in question."

In Hardy v. Greathouse, 406 Ill. 365, 94 N.E.2d 134 a reservation of ⅟₁₆ of all oil and minerals "produced" from the land for a term of 15 years was held to be a ⅟₁₆ royalty. Plaintiff points out the fact that said case was criticised by Summers, Oil & Gas, Vol. 3, page 175, (1951–52 Pocket Part, as being out of line with the authorities generally, as follows:

"The Court's conclusion that a mineral interest in the oil and gas in place was not reserved in the grantors seems to be based on the fact that the word 'produced' was used, and on the further fact that the grantors did not expressly reserve the privilege of going on the land to produce the minerals. The word 'produced' or similar words, commonly appear in grants or reservations creating separate estates or interests in oil and gas in place. Other courts have generally held that such words are not indicative of an intent to create a royalty interest. The following quotation from Little v. Mountain View Dairies, 1950, 35 Cal.2d 232, 217 P.2d 416, fairly represents the viewpoint of other jurisdictions:

"'The defendant contends that the addition of the words "and which may hereafter be produced and saved" to a grant of a fraction of all the oil in and under the land clearly evidences an intent that the interest granted should be expense free. It has been generally held, however, that a grant of a fraction of all "of the oil, gas and other minerals in and under, and that may be produced" from the land creates an expense-bearing mineral fee interest rather than an expense-free royalty interest.' The court cited Kansas, Oklahoma and Texas cases.

"Furthermore, if the interest excepted in the instant case was an interest in the oil and gas in place, the failure of the grantors to expressly reserve the privilege of going on the land to produce them was wholly immaterial for the reason that such an easement is implied."

■ We agree with the quoted statement. But, we do not have in this case an addition of the words "hereafter produced and saved" to reservation of a fraction of the oil "in and under the land." We are aware of the fact that when such language is contained in a reservation it is held a reservation of an interest in the mineral in place. As in Armstrong v. McCracken, supra, the interest reserved by the Bank in its deed to Jacobs was not in the oil, gas and minerals "in and under the land," that is, minerals in place or as mineral fee, which would require that the owner of the reserved interest give up a part of the thing reserved to get the oil produced, but, on the contrary, there was expressly reserved ⅟₂₄ of "all" the oil and gas "produced, saved and made available for market." While the reservation contemplated that the land might be leased by the grantee and that a bonus and rentals might be ob-

tained and retained by him, such rights, natural attributes of ownership of the mineral fee but not of royalty, were expressly granted exclusively to Jacobs and none of them were retained by the grantor. See Brown v. Smith, Tex.Civ.App., 168 S.W.2d 513, 517, Id., 141 Tex. 425, 174 S.W.2d 43, 46; Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543, 544; Moore v. City of Beaumont, Tex.Civ.App., 195 S.W.2d 968, 980; 26 Tex.Law Rev. 569. The express grant of such rights to the grantee merely declared the legal effect of grantor's retention of a right only to $\frac{1}{24}$ of the oil after it was produced, saved and made ready for sale. See 4 A.L.R.2d 500, 503. Furthermore, if the grantee did not lease but produced the oil himself grantor's interest would not be affected. The grantor was entitled to $\frac{1}{24}$ of all the oil produced, saved and made available for market, regardless of who produced it and regardless of any contract between Jacobs, the grantee, and his lessee as to out of whose interest the Bank should be paid.

In Pinchback v. Gulf Oil Corporation, Tex.Civ.App., 242 S.W.2d 242, 243, (RNRE), Mrs. Pinchback conveyed to Gulf 8.28 acres out of a 119 acre tract, reserving unto herself "$\frac{1}{8}$ th of all minerals that may hereafter be produced and saved" on the land conveyed. She conveyed $\frac{1}{4}$ of the reserved $\frac{1}{8}$ to others. Mrs. Pinchback later executed a lease on the 119 acres to Landry, who assigned it to Humble. Oil was discovered on the 119 acres and Humble and Gulf pooled their interests in the 119 acres, dividing said tract into, among others, three 20 acre units, each of which contained part of the 8.28 acres conveyed by Mrs. Pinchback to Gulf. There was no drilling on the 8.28 acre tract. Humble paid Mrs. Pinchback $\frac{3}{4}$ of $\frac{1}{8}$ of all the oil produced from the 119 acres. She sued Gulf for damages for failure to develop the 8.28 acre strip and, in the alternative, for what she alleged was her portion of the proceeds received by Gulf from Humble under the pooling agreement. Gulf filed a motion for an instructed verdict on the ground that Mrs. Pinchback owned a mineral interest, not a royalty, in the 8.28 acre tract and, therefore, it was under no

obligation to protect Mrs. Pinchback's $\frac{1}{8}$ mineral interest and Mrs. Pinchback had the right to protect said $\frac{1}{8}$ mineral interest by producing oil therefrom herself. The motion was granted. Mrs. Pinchback appealed, contending the court erred in holding that the interest reserved by her was a mineral interest rather than a royalty interest, thus presenting the question whether a reservation of "$\frac{1}{8}$ th of all minerals that may hereafter be produced and saved" constituted a mineral fee or a royalty. The Court of Civil Appeals held it was a royalty, not a mineral fee. It held that Mrs. Pinchback reserved $\frac{1}{8}$ of the gross amount of oil which might be produced from said tract; that she had no right to lease the land or to develop it herself and that the reservation was of a royalty interest and not a mineral interest. Likewise, the reservation in the deed from the Bank to Jacobs of "an undivided one-twenty-fourth ($\frac{1}{24}$) of all the oil, gas and other minerals produced, saved and made available for market therefrom for a period of 15 years" with no right to lease or to share in any bonus or delay rentals in any lease thereafter executed by Jacobs constitutes a reservation of a royalty and not a mineral fee. Although the reserved interest was not referred to in the deed as royalty and it was not expressly stated that the reserved interest was free of cost, the language used clearly shows the quality and nature of the interest reserved and that it was intended that the reserved interest was not in the minerals in place but only in the oil thereafter produced, saved and made ready for the market. A $\frac{1}{24}$ or a $\frac{1}{8}$ royalty, as contended for by plaintiff, is not $\frac{1}{24}$ of "all" oil "produced, saved and made available for market" as plainly provided for by the express terms of the reservation. The nature and quality of the reservation is further clearly shown by the provision that the owner of the reserved interest had no right to execute a lease or to share in any bonus or delay rentals. Although $\frac{1}{8}$ of the oil produced is the usual royalty, any other percent may be agreed upon. Where the Bank reserved $\frac{1}{24}$ of all the oil produced, saved and made available for market and provided that the Bank should

not share in the bonus and royalties, it was wholly unconcerned with the percent of the oil that might be agreed upon as royalty in any lease later executed by Jacobs, and such a provision would avoid any temptation by Jacobs to try to make a deal beneficial to the owner of such interest but detrimental to the Bank, such as an agreement that a lessee would pay a large bonus and a less than usual percent of the oil produced, as royalty.

We think the decision of the Supreme Court in Watkins v. Slaughter, 144 Tex. 179, 189 S.W.2d 699, tends to support the judgment rendered. Slaughter conveyed to Watkins 80 acres of land by a deed which provided:

"Together with a 15/16 interest in and to all the oil, gas and other minerals in and under and that may be produced from said land and the grantor retains title to a 1/16 interest in and to all of the oil, gas and other minerals in and under and that may be produced from said land; but it is distinctly agreed and understood that the grantor, his heirs and assigns shall not receive any part of the money rental paid on any future lease; and the grantee, his heirs, or assigns, shall have authority to lease said land and receive the cash bonus and rental; and the grantor, his heirs or assigns, shall receive the royalty retained herein only from actual production of oil, gas or other minerals on said land."

The Supreme Court said the controlling question was, "Did the conveyance of the land by Slaughter to Watkins, together with a 15/16 interest in the oil, gas and other minerals, and the reservation to Slaughter of a 1/16 interest in the oil, gas and other minerals, reserve to Slaughter a 1/16 royalty interest, or did it reserve to him merely a 1/16 mineral fee interest?" Unlike the Slaughter case, there was not in the reservation here under consideration a reservation of the minerals "in and under" the land nor was the word "royalty" used to describe the reserved interest but, as in the Slaughter case, the deed from the Bank to Jacobs described the nature and quality of the reserved interest and stated what inci-

dents and rights should attach thereto. In both cases, the grantor was not to receive any part of the bonus or delay rentals under a future lease, nor was the grantor to have any authority to execute a lease but such rights were expressly given to the grantee. In the instant case, the deed from the Bank to Jacobs clearly states that the 1/24 reserved is only out of oil and gas produced, saved and made available for market, within a certain period of time, not 1/24 of the oil and gas in place, that is, in and under the land. Judge Sharp said in the Slaughter case:

"Disregarding for the moment the use of the word 'royalty' in this cause, it is apparent that the clause is intended to reiterate that the owner of the 1/16 is to be paid only from production, and that he shall receive no part of the payments of bonus or rentals, all of them belonging to the owner of the 15/16 interest, the mineral fee estate."

A 1/24 of all the oil in and under and that may be produced from a tract of land is an interest in the minerals in place in the ground, but that is a different interest than a 1/24 of all the oil that may be produced, saved and made available for market within a certain period. The first is a present interest in oil in the ground before it has been produced, saved and made available for market. Money, effort and time must be expended finding and producing the oil before it can be saved and made available for market. The second is an interest in the oil, not in its present state in the ground, but after it has been produced, saved and made ready for market. What the Bank reserved was the right to receive 1/24 of "all" the oil, gas and other minerals after it has been produced, after it has been saved and after it has been made available for market, which, ordinarily, means 1/24 of all the oil when it is ready to be run in the pipe line to a purchaser. The Bank did not reserve any right to drill, lease or share in bonuses and royalties. These rights, not reserved but expressly conveyed to the grantee, his heirs and assigns, are attributes of a mineral fee. The provisions of the reservation describe a 1/24 royalty and are inconsistent with a

1/24 mineral fee. Although the reserved interest is not called a royalty and it is not expressly stated that the reserved interest is to be free of cost, it is not referred to as minerals in and under the land, or a mineral fee, and the reservation does not retain the natural attributes of a mineral fee. Turpin, "Mineral Deeds and Royalty Transfers," 1st Annual Institute on Oil & Gas Law (Southwestern Legal Foundation) pp. 222–232. Had the reservation contained the word "royalty" it would have added nothing to its effect. Calling it royalty would have been merely to call by its usual name what the instrument described. " 'Royalty' refers not to oil and gas in place, but to a share in the oil and gas produced." Glassmire, "Law of Oil and Gas Leases and Royalties," 2nd Ed., 1938 Pocket Parts 949, page 67.

"Royalty interest may be created prior to any lease for oil and gas purposes. In some jurisdictions a grant or reservation of a royalty prior to lease has the effect of creating a separate mineral fee estate in the oil and gas or in the right to produce them, but if such interest is restricted to the right to receive a portion of the oil or gas produced with no right in the owner thereof to join in future leases, or to receive a portion of the bonus or delay rentals, the interest is a perpetual nonparticipating royalty." Summers, Oil and Gas, 1938, Vol. 3, pp. 349–350, Pocket Parts 1951.

In Lion Oil Co. v. Gulf Oil Corp., 5 Cir., 181 F.2d 731, 734, the court said:

"The language 1/2 of 7/8 of all oil produced and saved clearly negates any inference or implication that the stated fraction was subjected to any deduction for operating costs."

The language of the reservation in the instant case, to-wit: "1/24 of all oil, gas and other minerals produced, saved and made available for market" together with the additional provisions of the reservation, clearly disclosed the intent to reserve 1/24 of the gross amount of oil produced, net to the Bank. The interest reserved is clearly royalty, hence, free of cost of producing, saving and preparing for market. We hold

that the reservation is unambiguous and reserved to the Bank, its successors and assigns, 1/24 of all oil, gas or other minerals produced, saved and made available for market as a royalty, free of expenses.

The judgment is affirmed.