NUMBER 13-04-00031-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI B EDINBURG

 

LON CARTWRIGHT, LANE T. SEALY, TRUSTEE

OF THE HOLMAN CARTWRIGHT IRREVOCABLE

TRUST, AND RICHARD LUCAS,                                                   Appellants,

 

                                                             v.

 

COLOGNE PRODUCTION COMPANY, ROBERT

HAUSSER, AND LAWRENCE J. FLUME,
JR.,                               Appellees.

 

    On appeal from the 36th District Court of Live Oak County,
Texas.

 

                               O P I N I O N

 

                Before Justices Hinojosa, Yañez,
and Castillo

                                      Opinion
by Justice Hinojosa

 








This is a gas royalty case.  Appellants, Lon Cartwright, Lane T. Sealy,
Trustee of the Holman Cartwright Irrevocable Trust, and Richard Lucas, claimed
that neither the lease nor the gas division order authorized appellees, Cologne
Production Company, Robert Hausser, and Lawrence J. Flume, Jr., to deduct gas
compression and treatment costs. 
Appellants contend the trial court erred in granting appellees= motion for summary judgment and in denying
their motion for partial summary judgment. 
We affirm in part and reverse and remand in part.

                                                   A.  Factual
Background

On September 20, 1922, Holman Cartwright and
Claire L. Cartwright (appellants= predecessors) executed an oil and gas lease
to Houston Oil Company of Texas.  Cologne
Production Company acquired the lease on January 1, 1968, and since then has
operated the wells on the leased premises. 
The Cartwrights and Cologne executed a gas division order, dated January
1, 1968, which expressly provides for the computation of gas royalties as
follows:

Each of the undersigned agrees as follows:

In making settlements for the interests of
the undersigned in said proceeds, you are authorized to use the net proceeds
received by you at the wells when the gas is sold at the wells; but if sold or
used off of the premises, you are authorized to use the market value at the
wells of the gas so sold or used off of the premises, such market value at the
wells is in no event to exceed the net proceeds received by you from such
sale.  

 








Throughout the time that Cologne has
operated these wells, the gas produced has flowed into gathering lines located
on the leased premises, into facilities for the removal of hydrogen sulfide,
also located on the leased premises, and into compressors on the leased
premises, which compress the gas to pressures sufficient to enable it to enter
the sales pipeline.  Since it acquired
the lease, Cologne has deducted the royalty owners= proportionate shares of the costs of
treating and compressing the gas in calculating royalties.  

Appellants filed suit requesting (1) a
declaratory judgment that appellees were not authorized to deduct any operating
expenses before calculating and paying gas royalties, and (2) an itemized
accounting of these expenses.  Appellants
then moved for partial summary judgment requesting that the court find as a
matter of law that appellees were not authorized to deduct any expenses from
revenues of all gas produced and sold, except taxes levied by the State of
Texas on the severance and production of the gas.  Appellees also moved for summary judgment,
asserting that no genuine issue of material fact existed regarding appellees= entitlement to deduct post-production
marketing expenses.   The trial court (1)
granted appellees= motion for summary judgment, except
appellees= request for attorney=s fees, which was denied, (2) denied
appellants= partial motion for summary judgment, and
(3) rendered judgment that appellants take nothing.

In two issues, appellants contend the trial
court erred in denying their motion for partial summary judgment and in
granting appellees= motion for summary judgment.  In three cross-issues, appellees contend that
(1) the trial court erred in denying their request for attorney=s fees and (2) conditionally, in the event
of reversal, the trial court erred in denying their motion to transfer venue
and upon remand, the case should be transferred to Bexar County.

Normally, we would address the venue issue
first.  However, because the issue is
raised in a cross-issue conditioned upon a reversal, we first determine if any
of appellants= issues present reversible error.  See Russell v. Panhandle Producing Co.,
975 S.W.2d 702, 707-08 (Tex. App.BAmarillo 1998, no pet.).

 








                                                     B.  Finality
of Judgment

We first address the issue of the finality
of the trial court's judgment.  A
judgment must be final before it can be appealed.  See Lehmann v. Har‑Con Corp., 39
S.W.3d 191, 192 (Tex. 2001).  A judgment
is not final unless it disposes of all pending parties and claims in the
record.  Guajardo v. Conwell, 46
S.W.3d 862, 863‑64 (Tex. 2001) (per curiam); Garcia v. Comm'rs Court,
101 S.W.3d 778, 784 (Tex. App.BCorpus Christi 2003, no pet.).  There can be no presumption that a motion for
summary judgment addresses all of the movant's claims.  McNally v. Guevara, 52 S.W.3d 195, 196
(Tex. 2001) (per curiam). In cases in which only one final and appealable
judgment can be rendered, a judgment issued without a conventional trial is
final for purposes of appeal if and only if it either states with unmistakable
clarity that it is a final judgment or actually disposes of all claims and
parties then before the court, regardless of its language.  Lehmann, 39 S.W.3d at 204; Garcia,
101 S.W.3d at 784.  The law does not
require that a final judgment be in any particular form.  Lehmann, 39 S.W.3d at 195; Garcia,
101 S.W.3d at 784.  Therefore, whether a
summary‑judgment order is a final judgment must be determined from its
language and the record in the case.  Lehmann,
39 S.W.3d at 195; Garcia, 101 S.W.3d at 784.








Here the judgment at issue (1) is entitled AFinal Judgment,@ (2) states that the Aforegoing orders are dispositive of all
claims and causes of action alleged by all parties, and that final judgment
should be rendered,@ (3) provides that appellants take nothing,
and (4) states that A[a]ll relief not expressly granted herein is
hereby denied.@ 
Because the trial court=s judgment states "with unmistakable
clarity that it is a final judgment,"[1]
we conclude we have jurisdiction to consider this appeal.

                                                      C.  Summary
Judgment

We review a trial court's grant or denial of
a motion for summary judgment de novo.  Nixon
v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548 (Tex. 1985).  A summary judgment movant has the burden of
showing that there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law.  Id.
at 548; CIGNA Lloyds Ins. Co. v. Bradleys' Elec., Inc., 33 S.W.3d 102,
104 (Tex. App.BCorpus Christi 2000, pet. denied).  Where the only question presented to the
trial court was a question of law and both sides moved for summary judgment,
the appellate court should render the judgment the trial court should have
rendered.  Jones v. Strauss, 745
S.W.2d 898, 900 (Tex. 1988); Bradley's Elec., Inc., 33 S.W.3d at 104.

In their first issue, appellants contend the
trial court erred by failing to apply relevant rules of law applicable to the
interpretation of the intent of the parties to an unambiguous written
contract.  Appellants assert that the Anet proceeds@ language in the 1968 gas division order
does not authorize deductions for post-production costs, other than State
taxes, in computing appellants= gas royalties.  Appellees argue that Anet proceeds@ means gross proceeds minus post-production
marketing costs.  








In construing an unambiguous oil and gas
lease, our task is to ascertain the parties' intentions as expressed in the
lease.  Heritage Res. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996); Sun Oil Co. v. Madeley, 626 S.W.2d 726,
727‑28 (Tex. 1981).  To achieve
this goal, we examine the entire document and consider each part with every
other part so that the effect and meaning of one part on any other part may be
determined.  Heritage Res., 939
S.W.2d at 121; Steeger v. Beard Drilling Co., 371 S.W.2d 684, 688 (Tex.
1963).  We presume that the parties to a
contract intend every clause to have some effect.  Heritage Res., 939 S.W.2d at 121; Ogden
v. Dickinson State Bank, 662 S.W.2d 330, 331 (Tex. 1983).  We give terms their plain, ordinary, and
generally accepted meaning unless the instrument shows that the parties used
them in a technical or different sense.  Heritage
Res., 939 S.W.2d at 121; Western Reserve Life Ins. Co. v. Meadows,
261 S.W.2d 554, 557 (Tex. 1953).  We will
enforce an unambiguous document as written. 
Sun Oil Co., 626 S.W.2d at 728.








Royalty is commonly defined as the landowner=s share of production, free of expenses of
production.  Heritage Res., 939
S.W.2d at 121-22; Delta Drilling Co. v. Simmons, 338 S.W.2d 143, 147
(Tex. 1960).  Production costs are the
expenses incurred in exploring for mineral substances and in bringing them to
the surface.  Parker v. TXO Prod.
Corp., 716 S.W.2d 644, 648 (Tex. App.BCorpus Christi 1986, no writ).  Absent an express term to the contrary, these
costs are not chargeable to the non-operating royalty interest.  Id. 
Whatever costs are incurred after production of the gas or
minerals are normally proportionately borne by both the operator and the
royalty interest owners.  Id.  These post-production costs include taxes,
treatment costs to render the gas marketable, compression costs to make it
deliverable into a purchaser=s pipeline, and transportation costs.  See Martin v. Glass, 571 F. Supp.
1406, 1410 (N.D. Tex. 1983), aff=d, 736 F.2d 1524 (5th Cir. 1984); Heritage Res., 939 S.W.2d at
122; Parker, 716 S.W.2d at 648; Le Cuno Oil Co. v. Smith, 306
S.W.2d 190, 193 (Tex. Civ. App.BTexarkana 1957, writ ref=d n.r.e.). 
The parties may, however, modify this general rule by agreement.  Heritage Res., 939 S.W.2d at 122.

The royalty provision language in the
instant case is similar to that of the division order in Judice v. Mewbourne
Oil Co., 939 S.W.2d 133 (Tex. 1996). 
In Judice, the division order provided, ASettlement for gas sold shall be based on
the net proceeds realized at the well by you.@  Id.
at 136.  Holding that the trial court
erred in concluding that the lessee was prohibited from deducting
post-production compression costs from the proceeds received for the sale of
gas, the supreme court explained that such language Aunambiguously provides that royalty is based
on net proceeds at the well.  >Net proceeds= expressly contemplates deductions, and we
note once again that >at the well= means before value is added by preparing
the gas for market.@ Id. at 137.       

Appellants contend that the law in force at
the time of the execution of a contract governs its construction.  Appellants rely on Pan Am. Petroleum Corp.
v. Southland Royalty Co., 396 S.W.2d 519 (Tex. Civ. App.BEl Paso 1965, writ dism=d), for the definition of Anet proceeds.@  The
lease in Pan American contained the following royalty provision:

To deliver to the credit of lessor, free of
cost, in the pipe line to which they may connect their wells, the equal one-eighth
part of all oil produced and saved from the leased premises and 1/8 of the net
proceeds of potash and other minerals in the mine.[2]

 








In construing this royalty provision, the El
Paso Court of Appeals held that there were no costs to be deducted from the
proceeds of the sale of the gas.  We find
this case to be distinguishable and unreliable for the following reasons.

First, unlike the gas in the instant case
which requires compression to enable it to enter the sales pipeline, the gas in
Pan American required no compression. 
The court, agreeing with the trial court below, explained, A. . . it is clear there are no properly
deductible items of expense involved in the sale of the gas and distillate,
as it is set forth without dispute that the gas flows from the wells by its own
power, some thirty to sixty feet, to a separator and/or meter and pipeline installed
by the purchaser.@  Id.
at 524 (emphasis added).  Further, the
language Ano properly deductible items of expense@ used by the El Paso court indicates the
possibility that there were other items of expense that would have been
deductible.

Second, the El Paso court cited Miller v.
Speed, 259 S.W.2d 235 (Tex. Civ. App.BEastland 1952, no writ), for the proposition
that Aa royalty interest is one that is free of
cost of producing, saving and preparing the product for market.@  Pan
Am., 396 S.W.2d at 524.  However,
after thoroughly reviewing the  Miller
decision, we conclude that this statement was taken out of context.








In Miller, the court was required to
review the effect of a reservation in a deed and for an accounting of royalty
accrued from the production of oil.  The
reservation provided, A[o]ut of the above described tract of land
there is hereby expressly reserved to the vendor herein, its successors and
assigns an undivided 1/24 of all the oil, gas and other minerals produced,
saved and made available for market. . . .@  Miller,
259 S.W.2d at 236.  The issue to be
determined was whether the reservation was of a mineral interest or a royalty
interest.  See id. at 237.  Holding that the reservation was of a royalty
interest, the Eastland Court of Appeals explained that A[t]he language of the reservation in the
instant case, to-wit . . . together with the additional provisions of the
reservation, clearly disclosed the intent to reserve 1/24 of the gross amount
of oil produced . . . free of cost of producing, saving and preparing for
market.@  Id.
at 241-42.   The reservation clause in Miller
clearly provided that royalty was to be calculated after the minerals were Aproduced, saved and made available for
market.@  No
such language exists in the gas division order before us.

Third, the El Paso court relied on the Alessee=s obligation to market the product@ as a basis for its holding.@  Pan
Am., 396 S.W.2d at 524.   However,
the oil and gas lease before us expressly provides that the lessee Ashall be under no obligation whatsoever to
market said gas.@ 
Thus, there is no implied duty to market in the present case.

Finally, the royalty provision in Pan
American expressly states that the royalty is Afree of cost.@  Id.
at 521.  The gas division order in the
present case is devoid of any such language.

Accordingly, we conclude that appellants= reliance on Pan American is
misplaced.  Not only are we not bound by
a decision of the El Paso court, but we find Pan American to be
thoroughly distinguishable.

Appellants further argue that Anet proceeds received@ means proceeds derived from the sale of all
natural gas, less only production and severance required to be paid.  In support of this contention, appellants
point to a provision in the gas division order which provides:








You are authorized to deduct and pay to the proper taxing authorities
all production and severance taxes required to be paid with respect to the
interest of the undersigned in the gas produced from the above described
land.  

 

Appellants argue that Cologne
drafted the division order providing itself authority to deduct taxes, and if
it sought the right to deduct other costs, such costs would have been included
in the division order.  We disagree.

The Texas Tax
Code imposes a tax on each producer of gas. 
See Tex. Tax Code Ann. ' 201.051 (Vernon 2002).  AProducer@ is defined as a person who takes gas from
the earth or water, a person who owns, controls, manages, or leases a gas well,
or a person who owns an interest, including a royalty interest, in gas or its
value, whether the gas is produced by the person owning the interest or by
another on his behalf by lease, contract, or other arrangement.  Tex.
Tax Code Ann. ' 201.001 (Vernon 2002).  This tax is imposed directly upon the royalty
owner and does not constitute a deduction from royalty.  We conclude that the language authorizing
Cologne to deduct and pay the taxes merely shifted the burden of paying the
taxes to Cologne.

We conclude
that the gas division order did not modify the general rule that
post-production costs are proportionately borne by both the operator and the
royalty interest owners.  See Heritage
Res., 939 S.W.3d at 122.  Because
appellees were entitled to deduct compression and treatment costs in computing
gas royalties owed to appellants, we hold the trial court did not err in
granting appellees= motion for summary judgment on this
ground.  Appellants= first issue is overruled.

                           D.  Proof
of Reasonable Expenses








In their second issue, appellants contend
the trial court erred by rendering a final take-nothing judgment against them
on the summary judgment record without any proof of costs deducted from their
royalty payments. 

In their live petition, appellants sought an
itemized accounting of the expenses 
deducted by appellees.  After
reviewing the record, we conclude that appellees did not raise this issue in
their motion for summary judgment.  In
their motion for summary judgment, appellees only asserted that in computing
appellants= gas royalty under the gas division order,
they were entitled to deduct post-production or marketing expenses.  When, as here, the trial court grants more
relief than is requested in a motion for summary judgment, we must reverse and
remand those issues after addressing the merits of the properly addressed
claims.  See Bandera Elec. Co‑op.,
Inc. v. Gilchrist, 946 S.W.2d 336, 337 (Tex. 1997).  Accordingly, we sustain appellants= second issue.

                                                         E.  Attorney=s Fees








In their first cross-issue, appellees
contend the trial court erred in denying their request for reasonable attorney=s fees pursuant to the Texas Declaratory
Judgment Act (Athe Act@). 
The Act allows a trial court to grant reasonable and necessary
attorney's fees as are equitable and just. 
Tex. Civ. Prac. & Rem. Code
Ann. ' 37.009 (Vernon 1997).   However, the prevailing party is not
entitled to attorney's fees as a matter of law. 
Sava Gumarska in Kemijska Industria D.D. v. Advanced Polymer Sci.,
Inc., 128 S.W.3d 304, 324 (Tex. App.BDallas 2004, no pet.).  The grant or denial of attorney's fees in a
declaratory judgment action is within the discretion of the trial court, and
its decision will not be reversed on appeal absent a clear showing that it
abused its discretion.  Oake v. Collin
County, 692 S.W.2d 454, 455 (Tex. 1985). 
In the exercise of its discretion, a trial court may decline to grant
attorney's fees to either party, or the trial court may grant attorney's fees
to the nonprevailing party.  Advanced
Polymer Sci., Inc., 128 S.W.3d at 324. 
A review of the record shows no abuse of discretion.  Appellees= first cross-issue is overruled.

                                                                     F.  Venue

Because we sustained appellants= second issue, which requires a reversal and
remand, we must consider appellees= conditional cross-issue that the trial
court erred by denying their motion to transfer venue.  

An appellate court must conduct an independent
review of the entire record to determine whether venue was proper in the
ultimate county of suit.  Ruiz v.
Conoco, Inc., 868 S.W.2d 752, 758 (Tex. 1993); see Tex. Civ. Prac. & Rem. Code Ann. ' 15.064(b) (Vernon 2002); see also
Blalock Prescription Ctr., Inc. v. Lopez‑Guerra, 986 S.W.2d 658, 663
(Tex. App.BCorpus Christi 1998, no pet.).  This review should be conducted like any
other review of a trial court's findings of fact and legal rulings, except that
the evidence need not be reviewed for factual sufficiency.  Ruiz, 868 S.W.2d at 758; Colonial
County Mut. Ins. Co. v. Valdez, 30 S.W.3d 514, 527 (Tex. App.BCorpus Christi 2000, pet. denied). If there
is probative evidence to support the trial court's determination, even if the
preponderance of the evidence is to the contrary, the appellate court must
uphold the trial court's venue determination. 
Valdez, 30 S.W.3d at 527; see also Ruiz, 868 S.W.2d at
758. Although we view the record in the light most favorable to the trial
court's ruling, we do not defer to the trial court's application of the law to
the facts of the case.  See Ruiz,
868 S.W.2d at 758. 








As a general rule, all suits must be brought
(1) in the county in which all or a substantial part of the events or omissions
giving rise to the claim occurred, (2) in the county of the defendant's
residence at the time the cause of action accrued if the defendant is a natural
person, (3) in the county of the defendant's principal office if the defendant
is not a natural person, or (4) in the county in which the plaintiff resided
when the cause of action accrued.  Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a) (Vernon 2002); Madera Prod.
Co. v. Atlantic Richfield Co., 107 S.W.3d 652, 657 (Tex. App.BTexarkana 2003, pet. denied).  However, venue is mandatory in the county in
which all or a part of property is located in (1) actions for recovery of real
property or an estate or interest in real property, (2) actions for partition
of real property, (3) actions to remove encumbrances from the title to real
property, (4) actions for recovery of damages to real property, or (5) actions
to quiet title to real property.  Tex. Civ. Prac. & Rem. Code Ann. ' 15.011 (Vernon 2002); Madera, 107
S.W.3d at 657.  A plaintiff must allege
the following two "venue facts," and establish them by prima facie
proof if specifically denied, to show that venue is mandatory under Section
15.011:  (1) that the nature of the suit
fits within those listed in Section 15.011; and (2) that all or part of the
realty at issue is located in the county of suit.  In re Stroud Oil Prop., Inc., 110
S.W.3d 18, 24 (Tex. App.BWaco 2002, orig. proceeding).  Because the venue provision of section 15.011
is mandatory, we strictly construe the statute. 
Maranatha Temple, Inc. v. Enter. Prods. Co., 833 S.W.2d 736, 739
(Tex. App.BHouston [1st 
Dist.] 1992, no writ).








Appellants brought suit in Live Oak County
based upon the mandatory provision of section 15.011 of the civil practice and
remedies code, alleging that they are royalty owners under an oil and gas lease
which covers land located in Live Oak County, and appellees have unlawfully
deducted certain expenses in calculating their royalty payments.  They argue that such an action constitutes
one for recovery of damages to real property. 
Appellees counter by arguing that the nature of the suit is about the
calculation and computation of royalty payments under a contract, not a dispute
regarding ownership of appellants= royalty interests.  We agree.

Appellants sought a declaratory judgment
that the royalties should be computed without deducting any operating expenses,
in accordance with the language of the gas division order.  Neither party disputed the amount of land
owned or the percentage interest owned by appellants.  Nor did the parties dispute appellants= rights to a royalty interest.  Because appellants only sought a declaration
from the trial court regarding the amount of the royalty, title was not an
issue in the lawsuit.  See Yzaguirre
v. KCS Res., Inc., 47 S.W.3d 532, 543 (Tex. App.BDallas 2000), aff=d, 53 S.W.3d 368 (Tex. 2001); see also Allison v. Fire Ins. Exch.,
98 S.W.3d 227, 243 (Tex. App.BAustin 2002, pet. abated) (holding addition
of Arecovery of damages to real property@ to section 15.011 does not expand the scope
of the provision beyond question relating to recovery of real property or
affecting title to Aland@). 
Because title was not involved, we hold the mandatory venue provision of
section 15.011 does not apply. 
Therefore, venue is governed by the general venue rule contained in section
15.002(a).  See Tex. Civ. Prac. & Rem. Code Ann. ' 15.002(a) (Vernon 2002).

Appellants do not allege that the unlawful
deduction from gross sales of unspecified operating expenses or their
entitlement to royalty calculations based on gross sales proceeds occurred in
Live Oak County.  The individual
appellees, Robert Hausser and Lawrence J. Flume, Jr., reside in Bexar County,
and Cologne Production Company has its principal office in Bexar County.  Therefore, because section 15.011 does not
control here, we hold that venue is proper in Bexar County.  Appellees= cross-issue is sustained.








                                                              G.  Conclusion

We affirm the trial court=s order granting appellees= motion for summary judgment declaring that
appellees are entitled to deduct post-production marketing expenses.  Because appellants= pleading requests an itemized accounting of
these expenses and appellees did not move for summary judgment on that issue,
the trial court granted more relief than was requested.  Accordingly, we remand the accounting issue
to the trial court for further proceedings. 
However, because we have sustained appellees' conditional cross‑issue,
we order the trial court to immediately transfer this case to the District
Court of Bexar County for those proceedings.

 

FEDERICO G. HINOJOSA

Justice

 

Opinion
delivered and filed this

the
5th day of January, 2006.











[1]
See Lehmann v.
Har-Con Corp., 39 S.W.3d 191, 206 (Tex. 2001) ("An order that expressly disposes
of the entire case is not interlocutory merely because the record fails to show
an adequate motion or other legal basis for the disposition."). 





[2] The Texas Supreme Court held that Aother minerals@ included gas.  Southland Royalty Co. v. Pan Am. Petroleum
Corp., 378 S.W.2d 50, 54 (Tex. 1964).