VANDENBARK et al. v. BUSIEK et al.

No. 7739.

Circuit Court of Appeals, Seventh Circuit.

April 3, 1942.

See, also, 1 F.R.D. 366.

J. Ivan Cole, of Mt. Vernon, Ill., for appellants.

Wm. Acton, of Danville, Ill., Walter Davison, of Mattoon, Ill., Elmer J. Lundy and Lewis M. Poe, Jr., both of Tulsa, Okl., and Kenneth E. Pearce and J. C. Kern, both of Carmi, Ill., for appellees.

Before EVANS, SPARKS and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

This appeal requires the construction of two instruments, one a deed containing a reservation, and the other a stipulation, executed a month after the first for the purpose of clarifying the reservation. Many conveyances are involved in the proceeding to support the rights claimed in the bill to quiet title and the cross complaint for similar relief, but the ultimate decision of the appeal must rest upon our construction of the deed as affected by the stipulation.

On December 16, 1938, appellees Busiek and wife and Rose and wife, the owners in fee of certain parcels of land, at least eleven in number, executed their warranty deed conveying that property to three grantees, Allyn, Allyn and Curtis, subject to three outstanding oil and gas leases previously executed to the Carter Oil Company. The deed contained the following provision:

"The Grantors however, expressly reserving unto themselves three-fourths of the Oil, gas and other petroleum royalties which may arise out of any present or future lease or leases covering the premises herein conveyed, it being understood and agreed that the said grantors shall have, receive, and enjoy three-fourths of all bonuses, rents, royalties, and other benefits which may accrue under the terms of

any present or future oil, gas or petroleum products lease or leases covering the herein described lands."

The question is, whether, by this reservation, the grantors retained title in fee to three-fourths of the oil, gas and other petroleum products, in place, or merely a right to share in the profits resulting from the removal thereof.

On the same day, December 16, Busiek and Rose executed a mineral deed to appellee Crawford, conveying an undivided one-eighth interest in all the oil, gas and other petroleum royalties that might be produced from the lands covered by the above deed, together with the right to ingress and egress at all times for the purpose of mining, drilling, exploring and developing the lands for oil and gas and other petroleum products, and of storing it, "subject to any rights now existing to any lessee or assigns under any valid * * * oil and gas lease of record heretofore executed; it being understood and agreed that said grantee shall have, receive and enjoy the herein granted undivided interest in and to all bonuses, rents, royalties and other benefits which may accrue under the terms of said lease * * * precisely as if the grantee herein had been at the date of the making of said lease the owner of a similar undivided interest in and to the lands described and grantee one of the lessors therein." A similar mineral deed was executed to appellee Wright. There were four leases then outstanding, three already referred to, to the Carter Oil Company, covering all but four parcels of the land. These were subsequently released by instruments filed of record on June 8, 1939. The fourth was executed on December 15, 1938, to Crawford and Wright and covered the four parcels not covered by the Carter Oil leases.

On January 20, 1939, appellees Busiek, Rose, Crawford, and Wright, and the Allyns and Curtis executed an instrument which they called a "Stipulation and Agreement" with terms as follows:

"Whereas, Rose and Busiek did, by Warranty Deed, convey the property to Abijah Allyn, Alonzo Allyn, and Mack Curtis * * * and

"Whereas by instruments dated December 16, 1938, and nominated 'Mineral Deeds' but intended to be and in fact conveying interest in the said royalties, bonuses, rents and other benefits so reserved, Rose and Busiek, as grantors, did convey * * * to Crawford and Wright each a one-eighth interest in the oil, gas and other petroleum royalties, * * * which might accrue under the terms of any present or future oil, gas or petroleum products lease, * * * covering the real estate described herein; and

"Whereas, in order to clarify and avoid confusion and controversy as to the interest of each of the parties hereto in and to the oil, gas and petroleum products, royalties, * * * which might arise out of any present or future oil, gas and petroleum products lease, or leases, covering the premises * * * the parties do agree and stipulate * * *

"(1). That the reservation in the deed from Rose and Busiek to * * * (the Allyns and Curtis) in the words 'Three-fourths of the oil, gas and other petroleum royalties' was intended to and did in fact reserve unto Rose and Busiek, three-fourths of the usual one-eighth royalty in oil, gas and petroleum products, just as though Rose and Busiek continued to be the owners of a three-fourths interest in the fee. The three-fourths interest reserved by Rose and Busiek as to bonuses, rents and other benefits was intended to and did in fact reserve unto Rose and Busiek three-fourths of the bonuses, rents, delay monies or any other sums which might accrue to or be due under the terms of any present or future lease or leases covering the premises, just as though Rose and Busiek continued to own three-fourths of the fee title of the property conveyed.

"(2). The interest conveyed or transferred by Busiek and Rose to Crawford and Wright respectively was intended to be and was in fact one-eighth each to Crawford and Wright of the royalties arising out of any present or future oil, gas and petroleum products lease or leases, and of the bonuses, rents, delay monies and other sums which might accrue or become due thereunder just as though Crawford and Wright each owned a one-eighth interest in the fee title to the premises, that is to say, Rose and Busiek conveyed and transferred to Crawford and Wright, each respectively one-sixth of three-fourths interest reserved by Rose and Busiek and set out in paragraph hereof.

"(3). That, therefore, the interest of each of the parties hereto with reference to

the reservation contained in the said deed is as follows:

"(a) Louis Rose is the owner of an undivided one-fourth interest in and to any royalties, bonuses, rents, delay monies, or any other sum or sums which might accrue or become due under the terms of any present or future oil, gas and petroleum products lease or leases, covering the premises described herein, and this interest shall be perpetual.

"(b) Busiek * * * one-fourth interest * * *

"(c) Crawford * * * one-eighth interest * * *

"(d) Wright * * * one-eighth interest * * *

"(e) Allyn, Allyn and Curtis * * * are joint owners of an individual one-fourth interest * * *

"(4). Each party hereto does * * * recognize and confirm the interest of each other party hereto in and to royalties, * * * which might accrue * * * under the terms of any present or future * * * lease, * * * and does consent and agree that if any words of art are omitted in any prior deed or conveyance between them, having to do with the subject matter of this stipulation, or if said instruments are defective in any way, then this instrument shall be construed as supplying any such words and remedying and rectifying any such defect."

This instrument was signed by each of the parties named, and acknowledged by each before various notaries public. All the foregoing instruments were duly recorded.

On April 27, 1939, the Allyns and Curtis sold the property to appellant Vandenbark, executing a warranty deed "* * * subject to the reservation as to oil and gas royalties and other rights as reserved by the grantors of these grantees in their deeds dated December 16, 1938 * * *" and also subject to "all Oil and Gas Leases then covering said real estate, grantee to have all rights of the grantors herein under such leases * * *"

On June 21 and 22, 1939, there were filed for record three mineral deeds dated January 12, 1939, executed by Busiek and conveying to appellees N. T. Paterson, George Hourn, and W. L. Southgate respectively, an undivided 1/48, 1/48, and 1/24 interest "in and to all of the oil, gas and other minerals * * * that may be produced from the lands * * * together with all the right of ingress and egress at all times for the purpose of mining * * * and developing said lands for oil * * *."

On October 28, 1939, Vandenbark conveyed to appellant Natural Resources Corporation, of which he and his brother were officers and incorporators, title to all the properties, subject to the same reservations as specified in the deed of the Allyns and Curtis to him, "only in so far as the same covers the interests of the parties hereto in the real estate herein described * * *"

Reciting the foregoing series of conveyances in his bill of complaint, Vandenbark filed a suit in which the corporation was subsequently granted leave to join as party plaintiff, asking that the oil and gas lease of Busiek and Rose to Crawford and Wright, the stipulation of January 20, 1939, and the five mineral deeds be set aside and declared null and void as against them, as a cloud on their title, and that they be delivered up for cancellation. Appellees filed answer and cross complaint asking that the interest expressed in the various instruments be quieted in them, and that all those instruments be declared valid.

The parties stipulated as to the correctness of the various instruments referred to in the pleadings. In addition both sides introduced evidence as to circumstances surrounding their execution and the understanding of the parties as to their relative rights in the properties involved. There was a dispute in the evidence as to whether or not Vandenbark knew of appellees' interpretation of the reservation, that it meant the retention of the three-fourths interest in the minerals in place, until after he had bought the farm.

The court rendered findings of fact as to the execution and filing of the series of instruments in controversy and concluded that appellants were not entitled to the relief prayed, and that the reservation contained in the deed of December 16, 1938, "was intended to be and is a reservation of three-fourths of all the oil and gas in, underlying and that may be produced from the real estate in said deed described, and a reservation of a fee simple in and to such oil and gas in place." It then proceeded to declare all the various instruments in controversy valid, and held that appellants were not bona fide purchasers for value without notice and that the rights acquired by them were inferior

896

and subordinate to those of appellees under the various deeds and leases, except for one-fourth of the oil and gas which might be produced. It also held appellees entitled to the relief claimed by them and set out the exact interest of all the parties in the premises, declaring that the appellant corporation, Wright, Crawford, Paterson, Hourn, Southgate, Busiek and Rose were necessary lessors to any future oil and gas lease which might be executed as to the premises, and that those parties or their successors in interest might separately lease their respective interests for oil and gas purposes, and retain as their own the consideration paid for such leases.

Appellants contend that the court erred in holding that the reservation is to be construed as one in fee simple of the oil and gas in place, arguing that, on the contrary, under the deeds, the minerals themselves passed to the grantees, subject only to the three-fourths royalty charge while the land was under lease for oil and gas. They do not challenge the right of the grantors to reserve an interest in royalties arising out of present or future leases.

■ The case arose under the Illinois law and is of course, to be determined by the Illinois law. Waggoner Estate v. Wichita County, 273 U.S. 113, 47 S.Ct. 271, 71 L.Ed. 566. There appears to be no question but that in this State, the fee simple interest in the surface and in the right to oil or petroleum may be separated and held by different parties. See Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, 131 N.E. 645, 16 A.L.R. 507; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818, 36 L.R.A.,N.S., 1108; Shell Oil Co. v. Manley Oil Corp., 7 Cir., 124 F.2d 714. To accomplish this purpose there must of course, be a conveyance or reservation of the oil in place. The question then is, whether the reservation of a fractional interest in the rents and royalties of the minerals in perpetuity constituted a reservation of the rights in that part of the oil in place.

■ We find no Illinois case squarely passing on the question. The only one where the meaning of the term royalty seems to have been under consideration, relied upon by appellants, holds that, "Oil in place in the earth is realty, to be sure; but 'oil in place' is not contemplated by the term royalty. Royalty, even if paid in oil, is personal property, and the proceeds thereof would be money." Hulse v. Hulse, 155 Ill.App. 343. At first thought this might appear to be decisive of the question here presented—if royalty is not oil in place, then a reservation of royalty would not reserve oil in place. However, we find a number of well-reasoned cases from other jurisdictions wherein the question was squarely presented and decided to the contrary, and which cases do not, on careful analysis, appear to be in conflict with the above definition under the Illinois law. In the absence of definitive decisions by Illinois courts on the subject we may turn to the decisions of other jurisdictions for guidance.

The question arose quite early in Pennsylvania, where the court considered the reservation in a deed: "Excepting the profits of one-half of all the stone coal, and of all other kinds of mineral, which may be discovered at any time hereafter,"—holding that it constituted a reservation of the corpus of all such coal and mineral in place. Weakland v. Cunningham, 3 Sad., Pa. 519, 7 A. 148. This rule was followed by the Supreme Court of West Virginia in Toothman v. Courtney, 62 W.Va. 167, 58 S. E. 915, 918, in the most thorough and exhaustive opinion we have found on the subject. The court there stated, "Though he [the grantor] did not reserve by name the oil in place, or any part of it, his reservation of all the rental or royalty to be derived from it compels the court to hold, by construction of the instrument, that it vests in him the title to that thing, the beneficial use whereof has been reserved, namely, the oil in place (quoting Jarman on Wills, p. 741) 'A devise of the rents and profits or of the income of land passes the land itself both at law and in equity—a rule, it is said, founded on the feudal law, according to which the whole beneficial interest in the land consisted in the right to take the rents and profits.' * * * A reservation of all possible benefit of the oil is tantamount to a reservation of the corpus thereof. * * *"

A commentator on the subject of Royalty as Real or Personal Property, 90 A.L.R. 770, summarizes: "So, it would seem that, where the intention of a landowner in conveying premises in fee is to reserve or except, *in perpetuum,* all benefits which the grantee as landowner, his heirs, administrators, or assigns, might otherwise obtain through the grant of royalty oil leases on

the premises, the effect both in law, and as a construction of the intention of the parties, is to except from the grant at least a portion of the oil in place." He quotes 1 Co. Litt. 45, "if a man seised of land in fee by his deed granteth to another the profits of those lands, to have and to hold to him and his heirs * * * the whole land itself doth pass. For what is the land but the profits thereof?" It is to be noted that this rule is applicable only to grants or reservations of a *perpetual* right to the rents or royalties, under present or future leases. See, also, Annotation, 101 A.L.R. 884, and cases there cited.

██ Considering the deed here involved in the light of these principles, we find that it clearly reserved the three-fourths interest in all rents and royalties both under existing and future leases. Thus it severed this interest in the profits of the oil and gas for all time to come. Such severance is permissible under the Illinois law. While under that law the term "royalty" is not synonymous with the thing for which the royalty is paid, nevertheless, under the decisions cited, with which we find no conflict in the Illinois cases, the reservation of a perpetual interest in the royalty has the effect of reserving the thing for which the royalty is paid. Hence, by the deed of December 16, the grantors reserved for their own use and disposition a three-fourths interest in the oil and gas in place which they were at liberty to deal with as they saw fit. Of course, the one-fourth interest not reserved by them passed by the conveyance to the grantees and thence to appellants. All thus became co-tenants with undivided interests in the oil and gas in place, and we find no error in the definition by the court of those interests.

Furthermore, the District Court held that the reservation in the deed from Busick, et al. to Allyn, et al., above referred to "* * * was intended to be and is a reservation of three-fourths of all the oil and gas in, underlying, and that may be pro-duced from the real estate in said deed described, and a reservation of a fee simple estate in and to such oil and gas in place." This ruling was based not only on the reservation in the deed but upon the Stipulation and Agreement, duly recorded and signed and acknowledged by all parties then having any interest whatever in the land, including the grantors and the grantees of the deed. The ruling was further supported by the oral testimony of four of the signers of the stipulation. Both the stipulation and such oral testimony related to the intention of all the parties to the deed at the time it was executed and it unequivocally supported the court's findings. It is not contended by any one, nor did the court so rule, that the stipulation was a conveyance of any kind of property. It merely clarified the intention of all parties to the deed as to what was conveyed by it. They thought, and said in the stipulation, that the language of the deed in this respect was ambiguous.

██ Appellants, who then had no interest whatever in the property, now say that the language of the deed is not ambiguous in this respect, but they insist that it does not support the District Court's conclusions. We readily concede that there was no ambiguity in the deed, but we think its language clearly supports the court's findings and conclusions as to the parties' intention, as heretofore stated. However, if we should be in error in this we are convinced that the stipulation supported by the oral testimony is quite sufficient to support the District Court's findings. It is not denied that the substance of the stipulation might have been inserted in the deed when executed, and it is not here contended that it does not support the ruling. Hence, we think there was no error in its admission and consideration as evidence of intention, in view of the fact that all interested parties joined in its execution, and no adverse interest was involved until after its recording.

Decree affirmed.