(No. 31466.—

RAYMOND HARDY *et al.*, Appellees, *vs.* JOHN H. GREAT-HOUSE *et al.*, Appellants.—(ILLINOIS MID-CONTINENT COMPANY, Cross Appellant.)

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

R. M. SHAW, and WALKER J. HENRY, both of Lawrenceville, for appellants.

ROLAND J. DE MARCO, ALBERT A. SCRIBER, and ALBERT A. BARNHARD, all of Mt. Carmel, for appellees.

DONOVAN D. McCARTY, of Olney, for cross appellant.

Mr. CHIEF JUSTICE THOMPSON delivered the opinion of the court:

This appeal was prosecuted to this court by John H. Greathouse, Julia Maxine Greathouse, Fred V. McGregor and Clara E. McGregor, defendants-appellants, from a decree of the circuit court of Wabash County, construing the effect of reservations in a deed made December 13, 1944, from plaintiffs-appellees, Raymond C. Hardy and Nancy Ethel Hardy to James T. Watson and Clara M. Watson, defendants below, but not appealing.

The complaint was filed January 19, 1949, and it is averred that the plaintiffs executed a warranty deed conveying certain realty, approximately forty acres, in Wabash County, Illinois, to James T. Watson and Clara M. Watson, reserving a certain interest in oil and gas produced thereon to themselves; that James T. Watson and Clara M. Watson, on May 5, 1945, by quitclaim deed, conveyed their interest in the same realty to Kenneth B. Watson and Anne D. Watson; that Kenneth B. Watson and Anne D. Watson, on October 18, 1946, by warranty deed, conveyed their interest in the same property to Fred V. McGregor and

Clara E. McGregor; that Fred V. McGregor and Clara E. McGregor, on April 19, 1948, conveyed their interest in approximately one acre of the same property and subject to the reservations in plaintiffs, to John H. Greathouse; that Fred V. McGregor and Clara E. McGregor, fully understanding that they, by mesne conveyances from Raymond C. Hardy and Nancy Ethel Hardy, had the customary landowner's interest in only one half of the oil and minerals produced from the land, and that under the customs and practices of the business, would receive in royalties one eighth of one half of the oil and minerals produced from the land, or one sixteenth of the total quantity of oil and minerals produced from the land, and plaintiffs, Raymond C. Hardy and Nancy Ethel Hardy, fully understanding that they had a like equal interest in the oil and minerals produced from the land, did execute an oil-and-gas lease to the Illinois Mid-Continent Company, covering approximately 39 acres, being the same land described in the warranty deed, with the exception of one acre, which had been conveyed to John H. Greathouse.

The warranty deed out of which this controversy arose is as follows: "The Grantors, Raymond C. Hardy, and his wife, Nancy Ethel Hardy, of the City of Mt. Carmel, County of Wabash, State of Illinois, for the sum of One Dollar ($1.00) and other good and valuable considerations, hereby convey and warrant, except one-sixteenth ($\frac{1}{16}$) of all oils and minerals produced from the premises hereby conveyed which said grantors reserve unto themselves for fifteen years from the date of this conveyance, to James T. Watson and Clara M. Watson of the City of Mt. Carmel, County of Wabash, State of Illinois, as joint tenants and not as tenants in common, the following described real estate: The Northwest Quarter ($\frac{1}{4}$) of the Northeast Quarter ($\frac{1}{4}$) of Section Twenty-nine (29), Township One South, Range Thirteen (13) West, containing forty (40) acres, more or less.

"Situated in the County of Wabash, State of Illinois, hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Illinois.

"Dated this 13th day of December, 1944."

Said deed was signed by Raymond C. Hardy and Nancy Ethel Hardy and witnessed and acknowledged before a notary public.

The various deeds made contained a reference to the reservation made in the original deed from plaintiffs. The Illinois Mid-Continent Company received from plaintiffs an oil-and-gas lease covering the entire tract, and on the same date, September 10, 1948, appellants, Fred V. McGregor and Clara E. McGregor, executed a similar lease to that company covering the tract, excepting the one acre previously conveyed to Greathouse. On December 31, 1948, defendants-appellants, John H. Greathouse and Julia Maxine Greathouse, his wife, executed an oil-and-gas lease to T. W. George, covering their one acre. Thereafter, a dispute arose as to the character and extent of the interest reserved by plaintiffs-appellees in the original deed as above set forth.

It appears that oil production is now going on, both on the Greathouse acre under the lease to T. W. George and on the remainder of the tract in wells of the Mid-Continent Oil Company.

The plaintiffs contend that the reservation made in their original deed was a reservation of one half of the oil and minerals under the tract conveyed, while the defendant T. W. George, as lessee of the one-acre tract from defendants Greathouse, denies that plaintiffs, by their reservation, have any interest in the realty, but have a right to receive one sixteenth of the production after severance from the realty; and it is contended that the lease from plaintiffs to the Mid-Continent Company was not effective to convey any interest whatever in the Greathouse one acre and in their answer prayed that it be set aside as to that one acre.

For clarification, the answers of the defendants McGregor and Greathouse assert that the interest reserved by plaintiffs in their original deed was an interest in the realty and was of one sixteenth of the oil and minerals in place; that thereafter, under the oil-and-gas leases in effect upon the premises, plaintiffs are entitled to one sixteenth of one-eighth royalty to be paid by the lessees. The answer of defendant, Mid-Continent Company, admits the interest of plaintiffs in the oil and minerals is one half, but avers that interest is in the realty and that therefore the oil-and-gas lease held by it as lessee from plaintiffs is the senior and prior lease from the whole premises including the one acre owned by Greathouse and under lease from him and his wife to T. W. George.

Plaintiffs replied to these answers and on the hearing testimony was introduced on the question of the intentions of the parties. This testimony was later stricken and the court entered a decree substantially holding that the reservation contained in the deed from plaintiffs is not ambiguous; that by the reservation, plaintiffs have no interest in the oil and minerals in place or in their realty; that plaintiffs are entitled to one sixteenth of the production of oil and minerals after severance from the land during the term stated in the deed; that plaintiffs' signatures are not necessary on the oil-and-gas leases; that defendant Mid-Continent Company has no interest in the one acre owned by defendants Greathouse; that the interest of the various parties are: Plaintiffs have one-sixteenth interest in all oils and minerals produced from the entire tract, this being one half of the one-eighth royalty provided for in the leases to T. W. George and Mid-Continent Company; that T. W. George has seven-eighths working interest in the one acre owned by Greathouse; that Mid-Continent Company has seven-eighths working interest in the remainder of the tract owned by defendant McGregor; that defendant Greathouse is entitled to one half of the one-eighth

royalty provided for by his lease to T. W. George, and that defendants McGregor are entitled to one half of the one-eighth royalty provided for in their lease to the Mid-Continent Company.

Defendants Fred V. and Clara E. McGregor and defendants John H. and Julia Maxine Greathouse appeal from that part of the decree which holds that plaintiffs-appellees have no interest in the oil and minerals in place or in the realty, and that plaintiffs-appellees are entitled to one sixteenth of the oil produced from the land or one half of the one-eighth royalty payable under the oil-and-gas leases on the premises.

The defendant Mid-Continent Company cross appeals from that part of the decree which holds plaintiffs-appellees reserved no interest in the realty and from that part which holds it has no interest in the oil and gas in the one acre owned by John H. Greathouse.

This presents the crucial question as to whether or not the reservation in the deed was of oil and minerals in place, or of oil and minerals severed from the realty, and the secondary question as to what proportion of the oils and minerals was reserved. The particular language in the deed controverted is, "except one-sixteenth ($\frac{1}{16}$) of all oils and minerals produced from the premises hereby conveyed which said grantors reserve unto themselves for fifteen years from the date of this conveyance, * * *."

The principal contention of both appellants and cross appellant is that the language constitutes a reservation of oil and minerals in place in the realty. Appellants urge that the language in controversy contains no ambiguity and that the intention of the grantors must be ascertained from the instrument itself, and cite the case of *Ambarann Corporation* v. *Old Ben Coal Corporation,* 395 Ill. 154. They also urge the rule that the creator of the language in a certain instrument is presumed to have intended the legal

purport and meaning of the language used. (*Sauls* v. *Cox*, 394 Ill. 81.) From these cases appellants base their contention that the legal meaning of the language as used here was to reserve one sixteenth of the oils and other minerals in place in the realty, and that consequently the share of appellees in the production of oil and gas under the leases would properly be one eighth of one sixteenth of the oil and gas produced, leaving one eighth of fifteen-sixteenths as the share of appellees in the royalties under the leases.

Cross appellant, to sustain a similar position, argues that the holding below was that royalty was reserved and that under the law an unaccrued royalty interest is an interest in the realty, and consequently the lease from plaintiffs to it was effective to convey a working interest in the one acre owned by Greathouse.

Appellants cite *Mandle* v. *Gharing*, 256 Pa. 122, 100 Atl. 535, discussed in 29 A.L.R. 593. The language involved in that case was "* * * excepting and reserving from the above all oil or gas produced from said undivided one fourth of the above described tract of land * * *." The court in that case held that such language excepted and reserved title to the oil and gas in place, but the basis of that holding was that the reservation was of all the oil or gas that could be produced from the realty involved. The fundamental differences between the reservation in that case and the instant one are (1) that in the *Mandle case* all the beneficial interest in all the oil and gas is reserved to the grantor, and (2) the reservation there is in perpetuity. In the instant case the language employed reserves only a portion of the beneficial interest in the oils and minerals, and that only for the term of fifteen years. The *Mandel case* is not controlling here.

Cross appellant cites the case of *Ohio Oil Co.* v. *Wright*, 386 Ill. 206, but this case affords but little assistance as the language there was not used in construing the terms of

any instrument and was obviously an abstract statement of a rule of law. Other cases cited might be differentiated, but that is not necessary here.

Appellees strenuously contend that the word "produced," as used in the reservation, controls the character of the interest retained by the grantor, and that "oils and minerals produced" plainly refers to oils and minerals reduced to possession and therefore not realty but personal property. If the reservation went no further, it might be properly said that the holding in *Vandenburk* v. *Busiek*, 126 Fed. 2d 893, would control, and that all the beneficial interest having been retained, the corpus also was retained. Here, however, the language goes further and provides "which said grantors reserve unto themselves for fifteen years from the date of this conveyance, * * *." Considering this limitation, that which is reserved is not "one-sixteenth ($\frac{1}{16}$) of all the oils and minerals," nor even that proportion of the oils and minerals "produced from the premises hereby conveyed," but such proportion of the production only during the fifteen-year period. No case is cited which holds that such a reservation amounts to a reservation of the corpus in place. The clear and plain meaning of the language seems to be that nothing is reserved unless there is production within fifteen years, and that if there is production, one part of each sixteen parts shall belong to the grantor. There is nothing to indicate a different intention. No right to enter and produce was reserved. The language does not purport to reserve one sixteenth of all the oils and minerals, but only that proportion if produced within the fifteen-year period.

It is apparent the grantor's right arises only after severance of the product from the realty and is in the nature of a right to accrued realty. In our view, the reservation here was not of an interest in the land. As was said in *Hulse* v. *Hulse*, 155 Ill. App. 343, "Oil in place in the earth is realty, to be sure; but 'oil in place' is not contemplated

by the term royalty. * * * But it can make no sort of difference whether the royalty reserved be oil or money, as royalty, when collected, must necessarily be personal property in any case." In the instant case the grantors' rights under the reservation do not arise until oil or minerals are "produced" from the "premises," and such rights are in personalty. Accrued royalties are personal property. *Ohio Oil Co.* v. *Wright,* 386 Ill. 206.

As to the portion of the produced oil to which plaintiffs-appellees are entitled, there can be little question. The reservation is explicit and clear. They are entitled to one part of every sixteen parts produced by the common, plain and unambiguous terms of the deed.

Cross appellant contends that the court erred in striking the testimony of the witness introduced on the question of the intention of the parties to the original deed and that reformation of the deed should have been granted. There is no evidence that the parties intended to insert words different from those appearing in the deed as made. The evidence is that the parties agreed upon the terms as inserted, but that they thought those terms reserved one half of all the oil. The mistake was not in the terms inserted, but the mistake, if any, was in the understanding of the parties of the legal effect of the agreement they made. If there was any mistake it was a mistake of law and not of fact. Before a deed may be reformed on the ground of mistake, the mistake must be shown to have been one of fact and not of law. (*Gromer* v. *Molby,* 385 Ill. 283.) And where contracting parties have reduced an agreement to writing it is presumed that the writing expresses their mutual intention. This presumption does not yield to any other conclusion unless the evidence of mistake is strong and convincing. (*Harley* v. *Magnolia Petroleum Co.* 378 Ill. 19.) Here the language in controversy is clear and unambiguous. There is nothing to indicate that the parties to the deed intended to use any differ-

374

ent language. There was, therefore, no mistake reformable by equity. The testimony on the question of intention was properly stricken.

We have gone over this record carefully and are of the opinion the decree of the circuit court is correct and should be affirmed.

*Decree affirmed.*