(No. 5234– )

GIBSON ELECTRIC Co., INC., Claimant, *vs*. STATE OF ILLINOIS, Respondent.

*Opinion filed July 9, 1970.*

McBRIDE, BAKER, WIENKE and SCHLOSSER, Attorneys for Claimant.

WILLIAM G. CLARK, Attorney General; GERALD S. GROBMAN, Assistant Attorney General, for Respondent.

PERLIN, C.J.

· Claimant, Gibson Electric Company, seeks recovery of a deposit of $24,190.45 made in conjunction with a bid for work to be performed on the Charles F. Read Hospital-Clinic.

Claimant presented two witnesses, James B. Sassman, an employee of Gibson Electric Company, who prepared the estimated costs on jobs, which Gibson was to perform; and, Thomas Gibson, President of the Company at the time of the hearing. Humphrey Gibson, who had been President at the time the bid in question was pending, had died prior to the hearing.

Respondent presented one witness, Lorentz A. Johanson, Supervising Architect of the Department of Public Works and Buildings.

The record reveals the following sequence of events:

1. On April 24, 1963, an advertisement was published in the Illinois State Register giving notice that bids would be received by the State of Illinois, Department of Public Works and Buildings, Division of Architecture and Engineering, for work to be performed on the Charles F. Read Hospital-Clinic. The pertinent portion of the advertisement reads as follows:

"Proposals for the following will be received by the State of Illinois, Department of Public Works and Buildings, Division of Architecture and Engineering, . . . . . Tuesday, May 28, 1963. . . . .

"1. General; Heating, Air Conditioning and Temperature Control, Ventilating, Plumbing; Covering for Piping, Ductwork and Equipment; Electrical Work; Food Service Equipment. . . . .

"All proposals to be in accordance with plans and specifications, which may be obtained from the Division of Architecture and Engineering. . . Mailing of plans and specifications will be discontinued one week before bid opening date. Affidavit of Availability required on all trades."

2. A letter, dated April 24, 1963, was addressed to the Gibson Electric Company from Lorentz A. Johanson, Supervising Architect, stating that plans, specifications, and bidding documents on the Read project were being sent, under separate cover, with an enclosed Affidavit of Availability to be signed by Gibson at least seven days prior to the bid opening date. The pertinent portions of the documents tendered to claimant read as follows:

(a) "CALL FOR BIDS"
"INSTRUCTIONS TO CONTRACTORS ESTIMATING THE ELECTRICAL WORK FOR CHARLES F. READ HOSPITAL-CLINIC. . . ."

"If any person contemplating submitting a bid for the proposed contract is in doubt as to the true meaning of any part of plans, specifications, or other proposed contract documents, he may submit to the Supervising Architect a written request for the interpretation thereof. The person submitting the request will be responsible for its prompt delivery. Any interpretation of the proposed documents will be made only by addendum duly issued, and a copy of such addendum will be mailed or delivered to each person receiving a set of such documents. *The Supervising Architect will not be responsible for any other explanations or interpretations of the proposed documents.*"(Emphasis supplied.)

(b) "PROPOSAL SHEETS FOR ELECTRICAL WORK, CHARLES F. READ HOSPITAL-CLINIC. . . . ."

"All proposals shall be accompanied by a certified check, cashier's check or bank draft made payable to the Department of Public Works and Buildings of the State of Illinois in the amount of five per cent (5%) of the *total of all proposals upon which the Contractor is bidding.* Failure of the Contractor to submit the *full amount in his check to cover all proposals bid upon* shall be sufficient cause to reject his bid. *The Bidder agrees that the proceeds of the check or draft shall become the property of the State of Illinois, if for any reason the Bidder within sixty (60) days after official opening of bids withdraws his bid, or, if on notification of award, refuses or is unable to execute tendered contract, and provide an acceptable performance bond within fifteen (15) days after such tender.*" (Emphasis supplied.)

3. In a designated space on page one of the proposal sheets, dated May 27, 1963, Gibson Electric Company signified that it subscribed to the Instructions to Contractors, Notice to Contractors, General Conditions of the Contract, Supplement to the General Conditions, and the Drawings and Specifications of Material and Workmanship for the *"Interior* Electrical Work for the Charles F. Read Hospital-Clinic. . . . .and, having examined the premises and conditions affecting the work, agreed to furnish all labor and material, implements, etc., as provided in the above Instructions to Contractors, Notice to Contractors, General Conditions of the Contract, Supplement to General Conditions, Specifications, . . . .as follows: *This proposal consists of six pages for Electrical Work for Charles F. Read Hospital-Clinic. . . .*"(Emphasis supplied).

Pages two and three of said proposal sheets provide as follows:

"*PROPOSAL NO. 1*: For the complete Interior Electrical Work for the Charles F. Read Hospital-Clinic, Zone 2, Chicago, Illinois, as shown on the Drawings. . . ."

(Claimant's figure is $483,809.00)

(PROPOSALS NOS. 1-A through 1-D are deductions in case the Owner elected to order certain omissions or additions in case of a substitution.)

"*PROPOSAL NO. 2*: For the complete Exterior Electrical Work for the Charles F. Read Hospital-Clinic, Zone 2, Chicago, Illinois, . . . ."(Claimant's figure is $130,935.00.)

·"*PROPOSAL NO. 3*: For the complete Interior *and* Exterior Electrical

Work for the Charles F. Read Hospital-Clinic, Zone 2, Chicago, Illinois, . . . ."(Claimant's figure was $614,744.00)

Page 4 of the Proposal provided that Gibson Electric would perform and complete their work in progress with the work of the other contractors, and that all work would be performed in a manner which would not cause delays.

Gibson listed three Surety Companies, who would write its surety bond if the contract was awarded it, the names of three insurance companies for Contractor's Builder's Risk Insurance, and one insurance company for Contractor's Workmen's Compensation and Public Liability Insurance.

Page 5 contains the corporate name and initials of the President, Secretary and Treasurer. Page 6 states that a certified check, cashier's check, or bank draft in the amount of $31,150.00 is enclosed.

(c) An Affidavit of Availability, dated April 25, 1963, was signed by H. M. Gibson for Gibson Electric Company. The Affidavit listed three jobs: the State of Illinois Eye and Ear Infirmary, Chicago, Illinois; Western Illinois University, Macomb, Illinois; and E. J. Marhoefer, Jr., Inc., for construction of West Side High School, Lockport, Illinois; and also attached thereto was a declaration that this was a true statement "relating to *all* uncompleted contracts. . . . .and *all* pending low bids not yet awarded or rejected." (Emphasis added).

4. A letter, dated June 27, 1963, to Gibson Electric Company, Inc., from Lorentz A. Johanson stated in part as follows:

"SUBJECT: The Charles F. Read Hospital-Clinic, Zone 2, Chicago, Illinois—Interior Electrical Work."

"I have been directed to notify you of the acceptance of your proposal for this project. A formal contract will be sent you later for signature, but pending its receipt please consider this letter your authority to proceed with the work, as soon as your indemnity bond and insurances have been approved by this division."

The letter then states approval of particular companies to

furnish the indemnity bond, Workmen's Compensation and Builder's Risk insurances.

"Description of work under your contract: Date of opening of Proposals: Tuesday, May 28, 1963. Proposal No. 1: FOUR HUNDRED EIGHTY-THREE THOUSAND EIGHT HUNDRED NINE AND 00/100 DOLLARS ($483,809.00)."

"Time of Completion: In progress with General Work and work of other contractors engaged on the project. . . ."

"ALL CORRESPONDENCE IN CONNECTION WITH THIS PROJECT SHOULD REFER TO SUBJECT TITLE AND CONTRACT NUMBER 72830."

5. Mr. Johanson testified that there was no request from any of the contractors as to an interpretation of plans and specifications, and no conversation or correspondence between Gibson Electric Company and the Department from June 27, 1963, until July 15, 1963. On that date, Mr. Johanson met with Mr. Humphrey Gibson, two men from the Department of Public Works and Buildings, and two men from Gibson Electric Company. Mr. Johanson further testified as follows:

"Mr. Gibson told me he was in a very unenviable position of being the contractor with too much work rather than the normal position of not having enough work, and presented me a rundown of jobs he had been the bidder on and subsequent being the apparent low bidder on my job."

"This caused him difficulty in getting a bond for my job. I had given him over fifteen days at that time."

Mr. Johanson then identified a document, which was given to him by Mr. Gibson at the conference showing that the Gibson Electric Company had become involved in four additional jobs since he had signed the Affidavit of Availability showing three jobs, thus bringing the number of jobs in progress on July 15, 1963, to seven. Mr. Johanson stated that the other jobs, amounting to about $400,000, caused Mr. Gibson to be overextended so that he could not get a bond on the job for the Charles F. Read Hospital-Clinic. The other participants in the conference did not testify at the hearing.

6. Mr. Johanson further testified that on July 16, 1963, a contract was tendered to Gibson Electric Company, but was never signed. No further conversations or correspondence took place between his office and the Gibson Electric Company at that time.

7. A letter, dated July 19, 1963, from the Department of Public Works and Buildings to Mr. H. M. Gibson, Gibson Electric Company, stated as follows:

"Pursuant to our conversation in my office on Monday, July 15, in the company of Messrs. Van Giesen and Evans of Architecture and Engineering Division, I have reviewed the data you gave me regarding the approximate $400,000.00 worth of work you have been awarded subsequent to the award on the Charles Read Clinic for the State of Illinois."

"As at the foregoing meeting, we did not feel that the information supplied by you is sufficient to cancel our letter of intent on the Read Clinic, and, if you do not accept the award of this contract, we will require you to forfeit your certified check."

Mr. Johanson testified that the Department did not receive an indemnity check within the fifteen days after the tender of the contract, as agreed by claimant under the Proposal Sheets, nor did he receive any notification from Gibson Electric Company as to any intention they had regarding the job.

8. In September the contract for interior work was awarded to the second lowest bidder at a cost of $21,891.00 higher than the Gibson Electric Company's bid.

9. Claimant's combination bid had been the lowest total bid.

10. A letter, dated November 13, 1963, to the Attorney General from Gibson Electric Company contains the following:

"RE: The Charles F. Read Clinic
 Zone 2. . . .Chicago, Illinois

Dear Sir:

With reference to the electrical work on the above project, we wish to submit the following facts:

The bid form called for the proposal to be in three parts. . .one quotation for the wiring of the interior of the building, on which we quoted $483,809.00; one quotation for the exterior wiring on which we quoted $130,935.00; and a combined quotation, on which we bid the sum of the above two quotations. . . .or $614,744.00.

Inasmuch as electrical jobs historically are never let in sections, we were led to believe the entire job would be awarded as a unit, assuming that the breakdown was wanted for accounting purposes. Had we been aware that the job possibly would be awarded in sections, we obviously would have bid the same on the total, but would have had to increase our bids on the component parts, due to overhead expenses.

We were awarded the interior wiring, and the exterior wiring was awarded to another contractor.

In view of the foregoing, we feel that forfeiture of our bid deposit under these circumstance is confiscatory, and that our bid deposit bond should be returned to us.

Very truly yours,

Gibson Electric Company, Inc.

H. M. Gibson"

According to Thomas Gibson, the foregoing letter written in November was the first indication to the State of Illinois that Gibson refused to perform on the grounds set forth therein.

The issues which are presented to this Court are: (1) whether a contract was in fact entered into by the parties; (2) whether claimant has proved by a preponderance of the evidence that the contract was properly rescinded; and, (3) whether respondent has a right to forfeit claimant's entire deposit or only its actual damages.

Claimant contends that a contract was never entered into between claimant and respondent, since claimant offered to furnish the complete interior and exterior electrical work for $614,744.00. Respondent rejected the offer, and countered with an offer to permit the installation of the complete interior electrical work at a cost of $483,809.00. Claimant was forced to reject this offer because of the im-

possibility of meeting expenses on only the interior section of the work.

Claimant further contends that it submitted an offer based on the bidding method, which was the industry-wide practice. To support this claim, it submitted the Compilation of Final Bids, which was prepared by respondent, showing that ten out of thirteen bidders submitted bids for Proposal No. 3, which were totals of Proposals Nos. 1 and 2. Claimant alleges that, if it were known in the industry that bids would be accepted on individual proposals, then the total of the separate proposals would be a greater amount than the aggregate bid submitted for the award of the whole job. Therefore, claimant argues, that the mistake precluded mutual assent to the terms of the contract, and consequently that it is non-existent, and the parties should be placed in status quo.

Thomas Gibson, President of the Company at the time of the hearing, testified that the mark-up would have been 5 to 8% different if the bids had been made on each individual item, and that they would have submitted two certified checks in the amount of the individual bids instead of one. Gibson stated that he had no documents to verify the fact that there would not have been sufficient profit if he had undertaken only Proposal No. 1.

Respondent's witness, Lorentz Johanson, testified that the reason for breaking down the proposal for electrical bids into three components was to attract contractors that are more conversant with the particular type of work called for, and that the intent of the Department of Public Works and Buildings was to let the contract to the lowest combination of bids. He stated that the Proposals, which were broken down into Interior, Exterior and Combination (Proposals No. 1, 2, and 3) were in the standard form used for this type of work.

Where the contracting parties have reduced an agreement to writing, it is presumed that the agreement expresses their mutual intentions. *Hardy* vs. *Greathouse*, 406 Ill. 365, 94 N.E. 2d 134.

An examination of page one of the Proposal Sheets, signed by Gibson Electric, shows that it specifically refers to "Interior" electrical work, to wit:

"The UNDERSIGNED hereby subscribing to the Instructions to Contractors, Notice to Contractors, General Conditions of the Contract, Supplement to General Conditions, the Drawings and Specifications of Material and Workmanship for the Interior Electrical Work for Charles F. Read Hospital-Clinic, Zone 2, Chicago, Illinois, and having examined the premises and conditions affecting the work AGREES to furnish all labor and material, implements, etc. as provided. . ." (Emphasis supplied).

This statement refers only to the INTERIOR electrical work. There is no such statement in regard to the Exterior Electrical work. Therefore, it would seem that claimant specifically agreed to perform the INTERIOR electrical work according to instructions and specifications. Had claimant been awarded only the Exterior job, its contention that it did not agree to accept only the Exterior job might have had merit due to the industry practice of awarding contracts as a whole, and the statement appearing on the form that "This proposal consists of 6 pages for Electrical Work."

Accepting, arguendo, claimant's contention that industry practice led it to believe Gibson Electric was bidding on a single proposal instead of three separate proposals, let us examine whether the contract was properly rescinded. As a general rule, a right to rescind a contract must be exercised promptly on discovery of facts which confer the right to rescind.

In *Mound City Distilling Co.* vs. *Consolidated Adjustment Co.*, 152 Ill. App. 155 at 159, the Court stated:

"One who has a right to rescind must act with reasonable promptness in rescinding, otherwise he will have waived his right to rescind. *Williston's Wald's Pollack on Contracts*, 345-6."

Claimant knew of the alleged mistake as soon as it received the letter, dated June 27, 1963. However, there was no notification to respondent of either the mistaken understanding or of claimant's intention to rescind on these grounds until November 13, 1963.

As a general rule, a party who desires to rescind a contract must, in order to effect a rescission, indicate his intention by an affirmative act, and give notice thereof to the other party. (12 I.L.P. Contracts, Sec. 351.)

Claimant alleges in its complaint that in the conference on July 15, 1963, Mr. Humphrey Gibson conferred with Mr. Johanson in Mr. Johanson's office, and advised him that Gibson's bid had been computed on the assumption that the award for electrical work on the Hospital-Clinic would be made under Proposal No. 3, that Gibson was for that reason unable to accept an award based only on Proposal No. 1, and demanded return of his certified check. Not one scintilla of evidence supporting these allegations was presented in the hearing. In fact, the testimony of respondent establishes that claimant had been unable to obtain the required performance bond because it had overextended itself with too many additional jobs, and that this was the reason for its inability to perform.

In the alternative, claimant alleges that Gibson made a bona fide error in the preparation of its bid, which error would have given rise to a substantial loss to Gibson, and that it should have been allowed to withdraw its bid. No proof was offered that acceptance of the Interior award would have given rise to a substantial loss. As a matter of fact the Exterior work was ultimately awarded at a cost to the State of $935.00 less than Gibson's bid. It is difficult to see how the awarding of the exterior work to claimant

would have prevented this alleged "substantial loss" inherent in its acceptance of the Interior contract.

That the time lapse of almost five months after discovery of the "mistake" was not a reasonable time in which to rescind is readily ascertainable from the circumstances of the case. It would appear that claimant should have acted to rescind on the grounds of mistake at least by its meeting of July 15th with respondent, having had ample notice since June of respondent's interpretation of the contract.

This Court has allowed rescission of a contract for mistake in the cases of *Allen* vs. *State*, 2 C.C.R. 404, and *English* vs. *State*, 3 C.C.R. 80. The standards for such rescission are set forth in the *Allen* case at p. 407 thusly:

"and for the further reason that we are convinced that claimants did not try to rescind their contract for any other reason than the mistakes made by them in the preparation of their several estimates, we believe it would be unjust and inequitable to compel them to suffer a loss as would be occasioned by the forfeiture of their. . . . checks."

In both of these cases it was established that claimants made the mistake, and that their refusals to proceed with the contracts were in fact based on the mistake. No such showing has been made in the instant case.

Claimant has not proved by a preponderance of the evidence that its refusal to proceed before the time for forfeiture of its check was occasioned by a mistake. On the contrary, respondent has presented documentary evidence to show that claimant's refusal was based on the fact that it had taken on too many jobs. Impossibility of performance or the inability of the promisor to perform does not discharge a duty created by the contract, especially where the impossibility arises from the act of the promisor himself. (*Pioneer Life Ins. Co.* vs. *Alliance Life Ins. Co.*, 374 Ill. 576, 30 N.E. 2d 66; *Chicago, M. & St. P. Ry. Co.* vs. *Hoyt*, 13 S. Ct. 779, 149 U.S. 1, 37 L. Ed. 625.)

In the alternative, claimant requests the difference

between its deposit and actual damages allegedly suffered by respondent in the amount of $2,299.45, which is the difference between claimant's deposit and the next lowest bid on the Interior work.

Respondent cites the case of *Warner Construction Co. vs. State of Illinois*, 8 C.C.R. 92, to the effect that, although forfeiture was not generally favored in law, a forfeiture by the State was an exception to the general rule where the State has fully performed its part of the contract.

Claimants argue that the standards set in the more recent case of *Bauer* vs. *Sawyer*, 8 Ill. 2d 351, 134 N.E. 2d 329, are controlling. In the *Bauer* case, the Supreme Court reviewed a forfeiture clause and declared it to be an invalid penalty. It approved the rule stated by the Restatement of the Law of Contracts, Section 339 (1) which provides as follows:

"An agreement made in advance of breach fixing the damages therefor is not enforceable as a contract and does not affect the damages recoverable for the breach unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimation."

Claimants further argue that respondent has recognized that the deposit made by claimant would only be used to satisfy the expenses incurred. In a letter dated August 8, 1963, Mr. Johanson stated in part to claimant:

"This leaves us no alternative but to declare your proposal guarantee forfeited in the amount required to cover our expense to accept the next lowest bidder."

In the instant case, the deposit was not a reasonable forecast of just compensation as is required by *Bauer*, and the actual damages were readily ascertainable. Therefore, claimant is entitled to recover the difference between the actual damages suffered by respondent ($21,891.00) and the amount of the deposit retained ($24,190.45).

Claimant is hereby awarded the sum of $2,299.45.