THOMAS J. LOGUE *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* CLEM W. MARSH *et al.*, Defendants and Counterplaintiffs-Appellees.

Fourth District   No. 13965

Opinion filed July 18, 1977.—Rehearing denied August 5, 1977.

Thomas J. Logue, of Glenn & Logue, of Mattoon, for appellants.

William E. Larrabee, of Harlan Heller, Ltd., of Mattoon, for appellees.

Mr. JUSTICE REARDON delivered the opinion of the court:

Plaintiffs, Virgie Wimple, Ruby Clearwaters, and Thomas Logue, appeal from an order of the circuit court of Douglas County granting defendants Clem and Dortha Marsh's motion for summary judgment. The issues are whether the trial court erred in granting defendants' motion for summary judgment as a matter of law through its construction of a warranty deed and oil lease, and whether defendants were entitled to an award of attorney fees.

In January or February, 1972, defendants purchased 27.7 acres of land from Mrs. Clearwaters, and Mr. and Mrs. Wimple. The warranty deed contained the following reservation:

> "* * * reserving unto the Grantors all royalties from existing oil wells under and by virtue of any lease, pooling or unitization agreement covering said real estate."

Mrs. Wimple, Mrs. Clearwaters (hereinafter referred to as Grantors) and their husbands had originally jointly owned 151 acres of land in Douglas County, including the 27.7 acres at issue here. Grantors became the sole joint owners of the land by the time of the filing of this suit. In 1955, Grantors and their husbands leased the oil and gas rights in the 151 acres to M. H. and Thelma Richardson. The lease, by its terms, was valid for 18 months and for as long thereafter as oil or other hydrocarbons were produced from the land and so long as drilling, exploring, and pumping operations continued with no cessation of activity lasting more than 60 days. Between 1955 and 1963, several oil wells were drilled on 100 acres of the property which included the 27.7 acres later conveyed to defendants. In 1965 plaintiff Logue purchased, by mesne assignment, the still effective 1955 lease from the Richardsons. All the parties hereto agree, however, that the pumping of the wells had ceased by June, 1973. There is disputed evidence indicating the cessation of pumping as early as 1971.

On May 9, 1974, Grantors executed a written ratification of the 1955 lease, extending the term for one year without the necessity of pumping any of the wells or drilling any new wells. This was done despite the fact that the wells had not been pumped within 60 days of the cessation of the last activity on the property. On April 30, 1975, Grantors further extended the lease until completion of this suit and for 90 days thereafter, with no pumping or drilling required by the lessee, Logue. At no time pertinent

hereto was any other lease, pooling or unitization agreement entered into covering the 100 acres.

On April 24, 1975, Logue and his employees sought to enter upon defendants' 27.7 acres. Defendant, Clem Marsh, refused them entry on the ground that the lease had lapsed. The plaintiffs, thereupon, filed this suit seeking a declaratory judgment contending that the clause in the 1972 deed reserved the mineral estate in the property to Grantors and that the 1955 oil and gas lease was still in effect. This claim was contested by the defendants who requested that the plaintiffs be enjoined from conducting further activity under the lease and asked for an award of attorney fees. Plaintiffs, thereupon, filed a motion for summary judgment which was denied on the ground that the reservation was not a clear and unambiguous reservation of a mineral estate in land.

Defendants then filed a countermotion for summary judgment seeking to cancel Logue's lease and plaintiffs filed an amended motion for summary judgment. The trial court granted defendants' motion for summary judgment and held that the deed reserved only the royalty or personal property interest in the oil produced from the wells and declared that the lease provision in question had expired under its own terms for nonproduction of oil prior to the transfer of title to defendants. The order enjoined plaintiffs from conducting any further activity on the defendants' land.

■■ Plaintiffs contend that the trial court erred in granting defendants' motion for summary judgment. The rule in Illinois is that a motion for summary judgment shall be granted "* * * if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." Ill. Rev. Stat. 1975, ch. 110, par. 57.

Plaintiffs further contend that the trial court erred as a matter of law in construing the deed reservation as royalty or personal property. It is plaintiff's contention that the language "all royalties from existing wells under and by virtue of any lease, pooling or unitization agreement" created a fee simple reservation of the mineral estate for those geological strata exploited by the wells. Consequently, according to plaintiffs, Grantors had the power to lease the mineral estate and to extend the time of the lease. In support of their position, plaintiffs rely upon *Vandenbark v. Busiek* (7th Cir. 1942), 126 F.2d 893, and *Hardy v. Greathouse* (1950), 406 Ill. 365, 94 N.E.2d 134. In *Vandenbark v. Busiek*, grantors of real property in a warranty deed reserved for themselves an estate in "* * * three-fourths of the Oil, gas and other petroleum royalties which may arise out of any present or future lease or leases covering the premises herein conveyed, * * * [and] that the said grantors shall have, receive,

and enjoy three-fourths of all bonuses, rents, and royalties, and other benefits which may accrue under the terms of any present or future oil, gas or petroleum products lease or leases covering the herein described lands." (126 F.2d 893, 893-94.) The Seventh Circuit, construing Illinois law, determined that this clause reserved a perpetual right to the royalties in the grantors and that "* * * the reservation of a perpetual interest in the royalty has the effect of reserving the thing for which the royalty is paid [*i.e.*, the mineral estate for oil, gas and petroleum products]." 126 F.2d 893, 897.

■■ In *Hardy v. Greathouse*, grantors reserved for 15 years, one-sixteenth of all oils and minerals produced from the land they conveyed. Our supreme court, in determining that the clause only reserved a personal property right to the land, stated that if the reservation had not been limited to a 15-year period,

> "* * * it might be properly said that the holding in *Vandenburk v. Busiek*, 126 Fed. 2d 893, would control, and that all the beneficial interest having been retained, the corpus also was retained." (406 Ill. 365, 372, 94 N.E.2d 134, 138.)

The court held that the grantors' rights arose only after the severance of the oil from the land and that the right reserved was in the nature of a right to accrued royalty to the proceeds from the land but was not an interest in the land itself. The rule in Illinois, therefore, is that a perpetual reservation of the royalties in the mineral estate or part thereof creates a real property right in the land. Conversely, a finite or limited in time reservation of the royalties to the mineral estate or part thereof creates a personal property right to the proceeds of minerals taken from the land.

In the instant case, to determine the nature of the Grantors' interest under the deed, we must construe the deed so as to ascertain the intent of the parties from a reading of the deed as a whole (*Miller v. Ridgley* (1954), 2 Ill. 2d 223, 117 N.E.2d 759), keeping in mind that where there is an ambiguity or question in construing a deed, it should be construed most favorably on behalf of the grantee. See *Jones v. Johnson* (1974), 16 Ill. App. 3d 996, 1000, 307 N.E.2d 222, 225, and the cases cited therein.

■■ In this case, the Grantors had reserved for themselves all royalties from existing oil wells under and by virtue of any lease, pooling or unitization agreements covering the property. The physical existence of an oil well, itself, is not perpetual but finite, unlike a fee simple estate in land. The term "existing" is susceptible only to the construction that the Grantors had reserved royalties only from those oil wells in existence on the 27.7 acres covered by a lease, pooling or unitization agreement at the time of the 1972 deed. Once those oil wells no longer were pumped or produced oil, pursuant to a lease, pooling or unitization agreement, they

were no longer in existence for purposes of the reservation and any right that Grantors may have had in the mineral estate would terminate.

■■ We have no doubt that the 1955 lease had terminated by its terms. All the parties hereto agree that activity pursuant to Logue's lease had ceased about two years prior to the bringing of this suit in June, 1975, and other evidence indicates that the wells had not produced commercial quantities of oil since 1971. As previously stated, by its very terms, the 1955 lease was valid only so long as drilling, exploring and pumping operations were pursued with no more than a 60-day lapse in continuous activity. (See also section 1 of the forfeited oil and gas leases act (Ill. Rev. Stat. 1973, ch. 80, par. 39).) Consequently, Logue's lease was indisputably forfeited prior to Grantors' purported extension thereof in May, 1974. Since Grantors had no royalty rights arising out of any lease, pooling or unitization agreement under which existing oil wells were pumped at the time of the filing of this suit and at the time of the purported extension of the 1955 lease in May, 1974, by the terms of the reservation, Grantors had no rights in the mineral estate on defendants' land. Accordingly, the trial court was correct in its ultimate finding, that the lease had lapsed and that Grantors had no rights in defendants' land. We do not need to determine precisely when the lease actually lapsed. Clearly, the lease was forfeited before any lease extensions were executed. Accordingly, we find no reversible error in the trial court's grant of defendants' motion for summary judgment.

■■ Defendants have also brought a counterappeal, contending that the trial court erred in denying them attorney fees. Defendants base their argument on section 2 of the forfeited oil and gas leases act (Ill. Rev. Stat. 1975, ch. 80, par. 40) which provides for the award of attorney fees to an owner of land who successfully seeks to release an oil or gas lease from record after the lease had become forfeited. We have no way of determining the merits of defendant's claim, however. Defendants have failed to provide this court with a report of the trial proceedings or an acceptable substitute in accordance with Supreme Court Rule 323 (Ill. Rev. Stat. 1975, ch. 110A, par. 323). Consequently, we cannot decide this issue and must presume that the trial court heard sufficient evidence and argument in support of its decision. *Lesser v. Village of Mundelein* (1975), 36 Ill. App. 3d 433, 344 N.E.2d 29; *Nelson v. Nelson* (1974), 17 Ill. App. 3d 651, 308 N.E.2d 132.

For the above-stated reasons, we affirm the judgment of the trial court.

Affirmed.

CRAVEN, P. J., and HUNT, J., concur.